UNITED STATES of America, Plaintiff,

v.

William G. LIAS et al., Defendants.

Civ. A. 565.

United States District Court
N. D. West Virginia,
Wheeling Division.

July 15, 1957.

**956**

Daniel Krause, Pittsburgh, Pa., for Standard Finance Co.

Albert Morgan, Morgantown, W. Va., U. S. Atty., and Homer R. Miller, Special Asst. to the Atty. Gen., for the United States.

John E. Laughlin, Jr., Pittsburgh, Pa., and George Caravacios, Wheeling, W. Va., for William G. Lias.

Carl G. Bachmann, Wheeling, W. Va., for Alice Lias, John Lias, and other members of the Lias family.

HARRY E. WATKINS, District Judge.

Standard Finance Company, Pittsburgh, Pa., has filed a common claim against the Receivers of Wheeling Downs, Inc., and Wheeling Downs Racing Association, for $50,000, and asks that such claim, without interest, be paid from the proceeds of sale of the race track. The United States has a tax lien for more than three million dollars against William G. Lias, the owner of the majority (56.6%) of the stock of Wheeling Downs, Inc., and 60% of the stock of Wheeling Downs Racing Association. The balance of the stock of both companies is owned by his wife, Alice Lias, the children of William G. Lias, and his brother, John Lias. If the Standard Finance Company claim is paid, most of the funds to pay it will come from money which would otherwise go to the Government on its tax lien, by means of a liquidating dividend to the Receiver of William G. Lias. The United States has objected to the claim, taking the position that (1) the claim was not filed in time, and (2) that it is a debt of William G. Lias, Alice Lias and John Lias personally, and not the debt of the Receiver of Wheeling Downs, Inc., or Wheeling Downs Racing Association. I make the following findings of fact and conclusions of law:

(1) In a suit to enforce the tax lien mentioned above, this Court appointed Joseph Curl as Receiver of Wheeling Downs, Inc., the owner of the race track, and Carl O. Schmidt as Receiver for Wheeling Downs Racing Association, the lessee of the race track. Both Receivers were appointed and qualified on February 22, 1952. Lias appealed to the Court of Appeals of the Fourth Circuit from the order appointing the Receivers, D.C. 103 F.Sup. 341, which was affirmed, 196 F. 2d 90.

While these appeals were pending, Lias stated that he and his staff did not want

the track to operate at the Spring race meet to begin in April, 1952, and that he and his track employees would not co-operate with the Receiver in operating the track at such race meeting, with the result that the Court ordered the Receivers to close the track and employ only watchmen to protect the property, and this was done.

Since neither of the Lias corporations owed the Government any money, Lias and his counsel were confident that the order appointing the Receivers would be reversed, with the result that Lias spent much money at the track after the appointment of the Receivers in cleaning up after a flood, building some additional stables, and making repairs. On the day of their appointment, the two Receivers went to the track and each told Lias, in person, and each of the Lias employees working at the track that they had no money for these improvements; that the track was in receivership, and that the Receivers would not be responsible for any labor or material used at the track after February 22, 1952, the date of their appointment, and that they must look to Lias personally. The Receivers also posted notices at the office building at the race track, and delivered to each workman a notice in writing to the effect that the Receivers would not be responsible for any labor or materials. The Pittsburgh, Wheeling, and other newspapers carried frequent news items concerning the appointment of the Receivers. Pittsburgh is less than sixty miles from Wheeling.

Notwithstanding this notice, despite provision of an injunction order that he and all others were restrained from interfering with the Receiver in the conduct of the receivership, and over the objection of both Receivers, Lias did build additional stables and spent considerable money in making repairs, obligating himself personally for same. Lias admits that he was told by the Receivers that they would not be responsible for any repairs and improvements, but he says that he thought such repairs and improvements were needed, and that he went ahead on his own and had the work done to show his "good faith." The record shows that Lias had great pride in the track, thought that the receiverships would be dismissed, that he would win his tax case then pending in the Tax Court, and that the track would be returned to him.

The Court did not authorize the track to operate until July 16, 1952, and it was after the appointment of the Receivers and before July 16, that such improvements were made. During this time neither the Receivers nor the Court had determined whether the track would be operated again. It turned out that the Tax Court case was not concluded for many years, and the track was later operated for several years by the Receivers, and, of course, the Receivers used, and were benefitted by the prior repairs and improvements.

On September 4, 1953, Standard Finance Company, of Pittsburgh, Pa., wrote a letter to Schmidt, advising him that it had a judgment note "against William G. Lias, John Lias, and Alice B. Lias," for $50,000. Lias now says that he borrowed this money and used it all to pay for the prior repairs and improvements at the track. The Receivers do not know, and the Court is unable to say what part, if any, of this money was used by Lias to pay for track improvements. It does appear, however, that Lias obligated himself for more than $30,000 for material and labor which he has not yet paid. There is nothing in the record, other than the statement of Lias, to show how the money from the Lias loan was spent.

The Receiverships of the two corporations were later consolidated, and Carl O. Schmidt was named Receiver of Wheeling Downs, Inc., replacing Joseph Curl. Notice was given and published by Schmidt pursuant to Court order, directing all creditors of Wheeling Downs, Inc., and Wheeling Downs Racing Association, to file their claims with him on or before June 3, 1957, or be forever barred. On June 26, the attorney for

958

Standard Finance Company wrote to the Receivers, enclosing a judgment note dated July 22, 1952. The note was also filed with the Receiver of William G. Lias in this same action, as a common claim against William G. Lias, but a common claim against Lias will be paid nothing . because of the Government tax lien. The only issue is whether this claim is a valid claim against the Receiver of either corporation. Such claim must be denied; first, because it was not filed in time; and, second, because it is not a valid claim against the Receiver of either corporation.

■ Standard's claim is based upon its note which shows the loan was made to William G. Lias and his family, and that Standard looked to them for payment. No claim is made that the Receivers or the Court knew or had anything to do with the creation of such obligation. On the day that evidence was taken on this claim, arrangements were then being made for the payment of a liquidating dividend to Alice Lias and John Lias for their share of the proceeds from the sale of the track for more than the amount of this claim, and more money will be distributed to them in the future. The remedy of Standard is to collect its debt from the persons obligated to them on the judgment note and to whom they made the loan. Most of the persons who furnished labor and material to Lias did not file claims against the Receivers of the race track, but the claims of those who did file were denied. If those who furnished material and labor, which went into the track, were not entitled to look to the Receivers of the race track for reimbursement, certainly the Finance Company which loaned money to Lias would not be entitled to look to the race track Receivers for payment.

■ Standard bases its claim upon the theory of unjust enrichment, but the facts do not support such a theory. "A person who officiously confers benefits upon another is not entitled to restitution therefor." Restatement, Restitution, Section 2, page 15.