UNIDYNE CORPORATION, Plaintiff,

v.

AEROLINEAS ARGENTINAS and
Argentine Naval Commission,
Defendants.

Civ. A. No. 83–504–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 7, 1984.

Ronald M. Gates, John W. McCormick, Boyd, Payne, Gates & Farthing, Norfolk, Va., for plaintiff.

Moffett B. Roller, Condon & Forsyth, New York City, for Aerolineas Argentinas.

Joseph M. Young, Reynolds, Smith & Winters, Norfolk, Va., for Argentine Naval Com'n.

## ORDER

DOUMAR, District Judge.

This matter arises on the motion of Aerolineas Argentinas to quash service of process or, alternatively, to dismiss the complaint for lack of in personam jurisdiction pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. This action, involving a foreign state, arises under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* For the reasons stated below, the defendant's motion to dismiss is GRANTED.

The plaintiff, Unidyne Corporation, alleges in the complaint at hand that a C–4 Ionosounde Pulse Radar Unit ("C–4 Unit"), a sophisticated instrument used to test levels of the ionosphere, owned by the Argentine Navy was shipped to Unidyne for repair but was damaged in transit. Pursuant to a repair contract, the Argentine Navy Procurement Office shipped the C–4 Recorder from Buenos Aires, Argentina, to Unidyne's Virginia plant via Aerolineas Argentinas on July 8, 1981. Because Aerolineas Argentinas does not fly into Virginia, the C–4 Recorder was transferred to Trans World Airlines, Inc. ("TWA") at the John F. Kennedy International Airport in New York under regular interline procedures. TWA Transported the C–4 Recorder to Dulles International Airport in Virginia, and on July 28, 1981 the unit was transferred to Groome Transportation, Inc. who carried the cargo by truck to the plaintiff's address in Norfolk, Virginia, arriving on July 29, 1981. Without dispute, the C–4 Recorder arrived in a seriously damaged condition.

On August 10, 1981, Unidyne sent a telex message to the Argentine Navy informing them of the damage to the C–4 Recorder and requesting that the Argentine government appoint Unidyne as the claims agent

to expedite the processing of any possible damage claims against the carriers. An Argentine naval officer, stationed at the Argentine Naval Commission in Washington, D.C., visited Unidyne's plant in Norfolk on August 27, 1981, to inspect the damage to the C–4 Recorder. Subsequently, on September 3, 1981, the Argentine Navy in Buenos Aires appointed Unidyne as their claims agent.

The plaintiff contends that in the course of negotiations Aerolineas instructed Unidyne to "begin repair work on the damaged unit and to prepare a damage report allegedly necessary to calculate damages." As a result, Unidyne claims to have completed approximately $43,600 worth of work. Further, the plaintiff alleges a settlement agreement was reached between Unidyne and Aerolineas in August, 1982 to cover the cost of Unidyne's partial repair work.

On July 29, 1983, Unidyne filed the instant action naming the Argentine Naval Commission and Aerolineas Argentinas as defendants. The complaint includes three counts. Count One, based on a quantum meruit theory, asserts that the defendants induced Unidyne to make repairs worth $43,600 to the C–4 Recorder and that the defendants were unjustly enriched thereby. Count Two alleges that Aerolineas Argentinas refused to honor a settlement agreement reached between those parties. Count Three contends that Unidyne, acting as claims agent for the Argentine Navy, has the right to assert an action against the carrier, Aerolineas Argentinas, for the total damage to the unit in the amount of $150,000. Service was effected by mailing a copy of the summons and complaint to the Virginia Secretary of the Commonwealth pursuant to § 8.01–329 of the Virginia Code (1977 Repl.Vol. and 1983 Supp.). The Secretary of the Commonwealth acknowledged that service was made on August 8, 1983, and a copy of the summons and other papers filed were forwarded by certified mail to Aerolineas' office in New York.

In the current motion before this Court Aerolineas asserts two grounds for relief. First, the defendant contends that service of process was improper and should be quashed. Secondly, Aerolineas states that this Court lacks in personam jurisdiction. Before discussing these two interrelated arguments, a brief analysis of the Foreign Sovereign Immunities Act is required, 28 U.S.C. § 1602, *et seq.*

The Immunities Act incorporates Section 1330 of Title 28 of the United States Code providing that district courts have both personal and subject matter jurisdiction over non-jury civil matters that involve claims against foreign states which are not entitled to immunity under 28 U.S.C. § 1605–1607, or under any international agreement. This statutory mandate requires a court to examine the underlying cause of action in light of the various exceptions to immunity in order to ascertain whether the foreign state is jurisdictionally subject to suit.

Here, the plaintiff principally relies on 28 U.S.C. § 1605(a)(2), to bar the defendant's immunity. This section provides that:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\* \* \* \* \* \*

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state, or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

Significantly, each of the subsections of § 1605(a)(2) requires that the commercial activities conducted by the foreign state have both some substantial contact with the United States and with the insuing litigation.

Aerolineas clearly meets the requirements for subject matter jurisdiction set

forth in 28 U.S.C. § 1330(a). The airline is an Argentina corporation whose shares are completely owned by the Argentine government. The undisputed facts indicate that Aerolineas regularly flies into New York City, and, indeed transported the C–4 Unit at issue from Buenos Aires to the John F. Kennedy International Airport, thereafter transferring the unit to TWA who flew the instrument to Dulles Airport in Virginia. The current action arose over damage in transit suffered by this particular piece of equipment. The defendant concedes this Court has proper subject matter jurisdiction to hear the action.

Aerolineas does assert, however, that this Court lacks in personam jurisdiction. The analysis necessary to determine if a foreign state is immune from suit substantially varies from the analysis required to determine if a particular defendant is amenable to suit in a particular forum under the Immunities Act. As emphasized by the Circuit Court for the District of Columbia in *Maritime International Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094 *cert. denied* —— U.S. ——, 104 U.S. 71, 78 L.Ed.2d 84 (1983), "the immunity determination involves considerations distinct from the issue of personal jurisdiction, and the FSIA's interlocking provisions are most profitably analyzed when these distinctions are kept in mind." *Id.* at 1105 n. 18.

Requirements to obtain personal jurisdiction under the Immunities Act is set forth in Section 1330(b) of Title 28:

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title [28 USCS § 1608].

The Act makes the statutory prerequisite for personal jurisdiction a two-step process: subject matter jurisdiction plus proper service of process equals personal jurisdiction. Aerolineas concedes that this Court has jurisdiction under § 1330(a) to exercise subject matter jurisdiction, but contends that the second step—proper service pursuant to § 1608—was not effected.

Proper service under the Immunities Act on Aerolineas as an agency or instrumentality of a foreign state, is set forth in § 1608(b) as follows:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, *or to any other agent authorized by appointment or by law* to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b) (Emphasis added.)

Section 1608 sets forth the *exclusive* procedures for service on a foreign state. H.R.Rpt. No. 94–1487, 94th Cong., 2d Sess. 23 (1976) *reprinted in* U.S.Code Cong. & Admin.News 1976, pp. 6604, 6622. Congress by enacting the Immunities Act intended the specific service of process re-

quirements contained in the statute to be followed exactly recognizing the difficulties inherent in cross-cultural and cross-lingual litigation. *Gray v. Permanent Mission of the People's Republic of the Congo to the United Nations,* 443 F.Supp. 816, 821 (S.D. N.Y.1978) *aff'd* 580 F.2d 1044 (1978). Every mode of service prescribed assumes either prior agreement as to manner of service or mandates *strict attention* to the linguistic and diplomatic problems inherent in such situations. *Id.* (Emphasis added). In light of this strong public policy articulated by Congress to insure adequate notice in litigation against a foreign state, this Court is directed to strictly interpret the requirements set forth in § 1608(b).

No special arrangement exists between the plaintiff and Aerolineas and, therefore, Unidyne attempted to serve the airline in accordance with subsection (b)(2) permitting service by delivering a copy of the summons and complaint to an agent authorized by law to receive service of process in the United States. Specifically, Unidyne obtained a court order on July 29, 1983, appointing an authorized process server who on August 3, 1983, in turn mailed the proper documents to the Secretary of the Commonwealth of Virginia, return receipt requested. On August 8, 1983, a clerk in the Secretary's office issued an Affidavit of Compliance that legal service had been made on the Secretary of the Commonwealth as statutory agent for nonresident persons, pursuant to § 8.01–329 of the Virginia Code, and that service was forwarded by certified mail, return receipt requested, to Aerolineas. If the Secretary is an appropriate agent authorized by the Virginia long-arm statute to receive service of process for this particular nonresident defendant, then, conceivably, service was proper under § 1608.

Service under the Virginia long-arm statute allows the Secretary of the Commonwealth to receive service for a nonresident defendant as his statutory agent only if "the exercise of personal jurisdiction is authorized by this chapter." § 8.01–329 *Va. Code* (1977 Repl.Vol. and 1983 Supp.). The proceeding section delineates when a per-

sonal jurisdiction over a nonresident defendant may be obtained by substituted service:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or things in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

§ 8.01–328.1 *Va. Code* (1977 Repl.Vol. and 1983 Supp.) (In pertinent part). When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against a defendant.

Aerolineas' actions in Virginia are nonexistent. Aerolineas does not fly into Virginia, although a toll-free number is listed in the local telephone directory. In connection with the instant action, Aerolineas transferred the C–4 Unit to TWA in New York who thereafter flew the package to Virginia. *After Unidyne discovered the* damage and notified the defendant of the problem, several telephone conversations ensued between the parties, the first occurring in August, 1981, and, as established in the record three written messages were forwarded from Aerolineas to Unidyne.

The first correspondence from a Mr. Juan A. Martinez, claims manager for the airline, was an undated telex message requesting that Unidyne "provide us with a description and costs of the repairs and modifications to be done to the unit in question." The second writing was a letter from Martinez dated December 9, 1981, referring to a prior telephone conference

and acknowledging receipt of the plaintiff's claim request, stated that "[o]nce we complete our investigations we will inform you [sic] the extent of our liability, if any, in this instance." The last correspondence was a telex message dated September 22, 1983, from Unidyne referring to a prior telex message from Aerolineas.

The plaintiff's complaint states in a conclusory fashion in paragraph ten that Aerolineas instructed Unidyne to begin repair work on the unit and to prepare a damage report. The complaint further alleged in paragraph fourteen that Aerolineas agreed on August 10, 1982, to pay $45,000 to settle the claim.

Initially, the Court notes that Unidyne bears the burden of demonstrating jurisdiction once the issue is placed in question. *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 704 (4th Cir.1970), *cert. denied* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970) (citation omitted). A single act may constitute a transaction of business under the Virginia long-arm statute if the asserted action arose from that one transaction. *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1240 (E.D.Va.1977); *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977); *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664 (1971). Here, neither Aerolineas nor its agents have ever entered Virginia to transact any business within the state. The plaintiff claims that merely conducting settlement negotiations constitutes the transaction of business. If the plaintiff were to prove a settlement agreement resulted he still must show that such settlement itself was transacted in Virginia. The plaintiff has introduced no more than conclusory and contradictory allegations that any settlement was even reached, much less made any showing that the transaction occurred in Virginia. Although a supposed settlement was demonstrated in the plaintiff's self-serving telex message of August 11, 1982, a later communication from Unidyne dated March 9, 1983, states, "We have been trying without success to get various parties involved to settle this claim." Obvious-

ly, his own letter, confirms that if a settlement agreement was reached it is obvious that it wasn't in Virginia. Mere telephone conversations, telex messages and letters *negotiating* a transaction are insufficient to form a basis for in personam jurisdiction. *Williams Crane & Rigging, Inc. v. B & L Systems, Ltd.*, 466 F.Supp. 956, 957 (E.D.Va.1979). Unidyne has failed to meet its burden of proof in failing to show how the alleged settlement constituted the transacting of business in Virginia.

Nor did Aerolineas contract to supply any service within the Commonwealth. The airlines' involvement in this transaction ended in New York. Aerolineas' contract with TWA to transport the C–4 Unit from New York to Virginia does not make TWA the agent of Aerolineas for purposes of obtaining in personam jurisdiction over Aerolineas. *Hudacek v. Puerto Rico International Airlines, Inc.*, 340 F.Supp. 492 (D.P.R.1972); *Albandoz de Reyes v. Japan Air Lines*, 70 F.R.D. 64, 69–70 (D.P.R. 1975).

The plaintiff, however, has submitted a letter dated September 16, 1981, from Mr. R.D. Godfrey, TWA's Claims Supervisor, that indicates Aerolineas agreed to hold TWA harmless for damages to the C–4 Unit arising in the second step of the shipment from New York to Virginia. The only effect of this agreement is to determine the rights and obligations between TWA and Aerolineas. The agreement did not arise in Virginia, nor can the alleged indemnity contract created in New York be used to elongate Aerolineas' involvement necessary to justify a finding of in personam jurisdiction. The fact that TWA flew into Virginia does not make Aerolineas responsible for TWA's actions, does not demand an interpretation that TWA's actions are imputed to Aerolineas or require the conclusion that Aerolineas contracted to supply a service, i.e., transporting goods, within Virginia.

Lastly, this Court does not find any basis to exert in personam jurisdiction under § 8.01–328.1(A)(3) or (4). Aerolineas did

not cause any tortious injury within the Commonwealth. Nor has any tortious injury resulted in the Commonwealth from Aerolineas' act or omission elsewhere. Any tortious injury occurred when and where the package was damaged. If Aerolineas' act or omission is responsible for the insuing damage the injury necessarily occurred at some point between Argentina and New York, the only places wherein Aerolineas had control of the package.

The plaintiff has failed to establish any basis under the Virginia long-arm statute in Counts One, Two or Three that would authorize the Secretary of the Commonwealth to serve as an "agent appointed by law" to receive service of process under 28 U.S.C. § 1608(b). Each count must be analyzed as a separate cause of action in determining in personam jurisdiction.

Count One, based on the airline's alleged unjust enrichment at Unidyne's expense, is founded in *quantum meruit*. Ordinarily, when one person renders services for another which are requested and accepted by him, the law creates an obligation, called an implied-in-law contract, on his part to pay a reasonable compensation, unless something in the relationship of the parties indicates otherwise. *Burke v. Gale*, 193 Va. 130, 67 S.E.2d 917, 919 (1951). The crux of a *quantum meruit* cause of action lies in the unjust enrichment of one party. *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363, 363–64 (1983). Merely rendering services alone does not create a contract implied-in-law, nor is such a contract implied when one officiously confers benefits upon another. *Weitzel v. Brown-Neil Corp.*, 152 F.Supp. 540, 549 (N.D.W.Va.1957); *United States v. Lias*, 154 F.Supp. 955, 958 (N.D.W.Va.1957). Further, even though the defendant may have benefitted from the plaintiff's services, the latter cannot recover unless he can show sufficient additional facts that imply a promise to pay. *Mullins v. Mingo Lime Co.*, 176 Va. 44, 10 S.E.2d 492, 494–95 (1940). In the action *sub judice, Unidyne* does not allege that Aerolineas owned the instrument, nor that they had any interest in the C–4 Recorder. Plaintiff has failed to demonstrate how the airline has benefitted from any repair work on the unit and also has failed to meet their burden of proof in showing a connection between the asserted action and Virginia.

In regard to Count Two, based on the alleged settlement agreement, the plaintiff has failed to meet his burden of proof in establishing any connection between the alleged transaction and Virginia sufficient to justify service on the Secretary of the Commonwealth. Lastly, Count Three is asserted by Unidyne acting as claims agent for the Argentine Navy and is based on tortious injury to the C–4 Recorder. As previously stated, no tortious injury resulted in Virginia from Aerolineas' actions.

The Court need not reach the issue as to whether the defendant is subject to suit in this forum under a due process analysis if proper service is effected later. Here, the plaintiff relies on a state service of process statute, and as clearly expressed in this Immunity Act's legislative history, such service must be strictly construed. As the plaintiff failed to obtain service under this statute, the suit must be dismissed.

Accordingly, the plaintiff has failed to effect proper service over Aerolineas and the defendant's motion to dismiss is GRANTED and the action hereby is ORDERED DISMISSED without prejudice as to Counts One, Two and Three insofar as they pertain to defendant, Aerolineas Argentinas.

IT IS SO ORDERED.