**UNIDYNE CORPORATION, Plaintiff,**

v.

**AEROLINEAS ARGENTINAS, Defendant.**

**Civ. A. No. 84–494–N.**

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 20, 1985.

Ronald M. Gates, John W. McCormick, Boyd, Payne, Gates & Farthing, Norfolk, Va., for plaintiff.

Moffett B. Roller, Condon & Forsyth, Alexandria, Va., for defendant.

## MEMORANDUM OPINION

DOUMAR, District Judge.

This case presents questions involving the due process rights of defendants sued in United States District Courts under provisions of the Foreign Sovereign Immunities Act of 1976 (codified at 28 U.S.C. §§ 1330; 1332(a)(2)–(4); 1391(f); 1441(d) and 1602–1611) (hereinafter cited as FSIA or the Act). For the reasons articulated below, this Court is convinced that trial of this action in Virginia under the Act would violate the defendant's due process rights, and concludes that this cause should either be dismissed without prejudice or transferred to an appropriate forum.

### I. FACTUAL BACKGROUND

In 1981, the Argentine Naval Commission (ANC) sought to repair a sophisticated naval instrument called a C–4 Ionosounde Pulse Radar Unit (C–4 Unit). Its affiliate, the Argentine Navy Procurement Office (ANPO) entered a repair contract with the plaintiff, Unidyne, whose facility is in Norfolk, Virginia. The ANPO shipped the C–4 Unit via defendant Aerolineas Argentinas' airbill. Aerolineas Argentinas (hereinafter A.A.) is a commercial airline owned by the Argentine government. A.A. does not fly into Virginia, but does fly between Argentina and New York. The C–4 was, therefore, flown by A.A. to New York's J.F.K. Airport and transferred to Trans World Airlines. T.W.A. then flew the unit to Dulles Airport in Northern Virginia where Groome Transportation, Inc. completed the delivery to Unidyne in Norfolk by truck.

The C–4 Unit was allegedly more damaged when received by Unidyne than when shipped by the ANC. The Argentine Navy, following an inspection of the C–4 Unit, appointed the plaintiff Unidyne as their claims agent on September 3, 1981, apparently so that Unidyne could pursue a damage claim against any potentially liable carrier of the C–4 Unit. The instant suit does not allege liability directly based on A.A.'s carriage between Argentina and

New York. Rather, the plaintiff claims that there were negotiations with A.A. representatives regarding the damage estimates to the C–4 Unit, for which A.A. may or may not have been liable. During these phone conferences and written communications, Unidyne informed A.A.'s representatives in New York that "it was impossible to estimate total transit damage without first performing extensive initial repairs to bring the C–4 Unit to a 'power on' condition." Complaint at 2. The plaintiff claims it expended about $43,500 in such repairs after A.A. agreed to cover the cost of these partial repairs. Various communications did go back and forth between the parties. The plaintiff claims a settlement was reached; however, the only evidence of such an agreement is a self-serving Unidyne telex message of August 11, 1982 to A.A. stating in pertinent part:

Attention: Senor Juan Martinez
Claims Manager

Sir:

Please accept this wire as formal acceptance by Unidyne Corporation of your kind offer to pay Unidyne Corporation Claim No. 044–2235–4721 for C–4 Ionosounde Pulse Radar Unit as requested in Unidyne letter dated 01 October 1981 and resolved for payment of claim by Telcon 10 August 1982.

As discussed in Telcon Unidyne will initiate no further action if this matter is resolved. As promised. By the end of this month.

Defendant's Motion to Dismiss, Exhibit J. None of the written communications show any confirmed settlement, or even prove any actual offer of settlement, by A.A. Some months later, on March 8, 1983, A.A. received the following letter from Unidyne:

RE: Aerolineas Argentinas

Dear Senor Gallina:

Unidyne Corporation has suffered extensive damage on a shipment which was shipped July 29, 1981. We have made numerous phone calls and sent numerous letters on this matter and, very frankly, we have not received the courtesy of any response as to the status of this case.

We expect to hear from you on this matter within seven working days or we will have no choice but to seek other means of resolving the issue.

Yours very truly,
Thomas E. Lee,
Risk Manager

Defendant's Motion to Dismiss, Exhibit K. There is no evidence of any other nature indicating any settlement or agreement with A.A.

## II. PROCEDURAL HISTORY

This case is here for the second time, with slightly different claims, a modification in service of process and one less defendant, the Argentine Naval Commission. In *Unidyne Corporation v. Aerolineas Argentinas and Argentine Naval Commission*, 590 F.Supp. 391 (E.D.Va.1984) (Unidyne One), the plaintiff sought damages based on several theories from A.A. arising out of their aviation activities in the United States. The Court granted A.A.'s motion under Fed.R.Civ.P. 12(b)(5), dismissing the plaintiff's complaint without prejudice on March 6, 1984 for failure to properly effectuate service under the FSIA provisions at 28 U.S.C. § 1608(b). *See Unidyne One*, 590 F.Supp. at 397.

In the prior decision, this Court clearly held that § 1608(b) provided the exclusive procedure for serving an agency or instrumentality of a foreign state and that its provisions were to be scrupulously followed. *Unidyne One*, 590 F.Supp. at 394–95. The plaintiff contended that the Secretary of the Commonwealth of Virginia, upon whom service was made, was authorized by Virginia law to receive process for A.A. and that service was therefore proper under § 1608(b)(2). This Court, however, concluded that A.A. had insufficient contacts with the Commonwealth of Virginia to bring it within the reach of the "long-arm" statute. Va.Code Ann. § 8.01–328.1 (1984 Repl.Vol.); *see Unidyne One*, 590 F.Supp. at 395–97. Since the Secretary of the Commonwealth was not an "agent authorized by ... law to receive service of process ..." within the meaning of 28

U.S.C. § 1608(b)(2), the complaint was dismissed without prejudice.

The instant complaint was filed on July 27, 1984. The plaintiff alleged that A.A. breached a contract to pay for repairs to the C–4 Unit (Count I). Alternatively, plaintiff asserts a breach of a settlement agreement (Count II) and a quantum meruit theory (Count III). This time, plaintiff sought to obtain service under the FSIA alone without resort to the Virginia long-arm statute. Presumably, the plaintiff now relies upon the FSIA service provisions found at 28 U.S.C. § 1608 which provide:

> (b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
>
> * * * * * *
>
> (2) if no special arrangement exists, *by delivery of a copy of the summons and complaint* either *to* an officer, *a managing or general agent,* or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents
>
> * * * * * *

An A.A. district sales manager in Washington, D.C. was personally served in the District of Columbia on August 22, 1984.

A.A. has filed a motion to dismiss alleging: (1) that the prior dismissal, though without prejudice, rendered this action res judicata; (2) that fifth amendment due process constraints bar assertion of personal jurisdiction over A.A. in this Court (Fed.R. Civ.P. 12(b)(2)); and (3) that the quantum meruit claim under Count III fails to state a cause of action (Fed.R.Civ.P. 12(b)(6)).

## III. DISCUSSION

### 1. Res Judicata

The defendant A.A. claims that this Court's determination in *Unidyne One* precludes further litigation on the issue of personal jurisdiction. A.A. apparently reads the prior case as a final determination that this Court is without personal jurisdiction to hear the cause. The actual holding of the case, however, is not quite so broad.

■ As indicated *supra, Unidyne One* analyzed the defendant's contacts with Virginia in the context of the state "long-arm" statute. In deciding that the Secretary of the Commonwealth was not authorized by law to receive process for A.A., the Court made detailed factual findings as to the relationship between Virginia and the defendant. The parties are, therefore, precluded from relitigating these factual matters. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327, 99 S.Ct. 645, 649–50, 58 L.Ed.2d 552 (1979).

■ A party is barred by the doctrine of res judicata, however, only when he seeks to relitigate *precisely the same issue* in the second case. In *Unidyne One,* the Court concluded that service on the Secretary of the Commonwealth was not authorized by *state* law. Plaintiff has now served A.A.'s own agent as expressly provided for in 28 U.S.C. § 1608(b)(2) and asserts that, under the FSIA the requisite "minimum contacts" analysis is fundamentally different from that involved in other cases. When seen in this light, it is apparent that these two issues are not precisely the same.

Accordingly, the plaintiff is not estopped from making this second assertion of personal jurisdiction. The prior decision does, however, prevent the parties from making any factual assertions concerning the defendant's activities in Virginia that are inconsistent with the Court's findings in *Unidyne One. See Smith v. McNeal,* 109 U.S. 426, 3 S.Ct. 319, 27 L.Ed. 986 (1883).

### 2. Due Process and the FSIA

The Foreign Sovereign Immunities Act was primarily intended by Congress to address three matters of pivotal concern in claims against foreign governments and their instrumentalities. The first provision,

codified at 28 U.S.C. § 1605,[1] deals with the subject matter jurisdiction of the federal courts in suits against such entities. The second provision, codified at 28 U.S.C. § 1391(f),[2] provides for venue. The third provision, codified at 28 U.S.C. § 1608,[3] as discussed *supra* and in *Unidyne One*, articulates, *inter alia*, the proper methods of obtaining service on the prospective defendants.

Plaintiff contends that satisfaction of these three statutory prerequisites necessarily provides the Court with personal jurisdiction. Congress, in the plaintiff's view, incorporated into the strictures of the FSIA all of the "process" to which the defendant is entitled. In making this contention, plaintiff places emphasis on this Court's statement in *Unidyne One* that "[t]he Act makes the statutory prerequisite for personal jurisdiction a two-step process: subject matter jurisdiction plus proper service of process equals personal jurisdiction." *Unidyne One*, 590 F.Supp. at 394. Since the parties do not contest the validity of either of the constituent parts of this equation, plaintiff contends there can be no dispute as to the sum.

 The statement quoted is true as far as it goes. It only deals, however, with the *statutory* prerequisites for personal jurisdiction. The venue provisions of 28 U.S.C. § 1391(f) cannot be, as plaintiff claims, the only restrictions on the exercise

of personal jurisdiction by a federal court. Under 28 U.S.C. § 1391(f)(1), venue is proper "in any judicial district in which a substantial part of the events ... giving rise to the claim occurred...." Under Unidyne's theory, a *unilateral act of a plaintiff* could provide a district court with venue, and hence personal jurisdiction over an alien defendant. Such a conclusion is untenable under "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) (unilateral act of one other than the defendant cannot provide personal jurisdiction over defendant). Personal jurisdiction must be based on the purposeful acts of the defendant. *Id.*

As an alternative argument, plaintiff claims that the due process "minimum contacts" analysis required in an FSIA case is fundamentally different from the analysis courts traditionally use in determining the presence or lack of personal jurisdiction over a particular defendant. Specifically, plaintiff contends that this Court should look to A.A.'s contacts with the United States as a whole and not merely Virginia. Since A.A. has substantial contacts with the United States, according to this theory, it is amenable to suit in any district in the country.[4]

---

**1.** The issue of subject matter jurisdiction was resolved in *Unidyne One* and is not contested by the parties in this action. *Unidyne One,* 590 F.Supp. at 393–94.

**2.** This subsection provides that:

(f) A civil action against a foreign state as defined in section 1603(a) of this title may be brought—

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is

brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or ...

**3.** The pertinent portion of the section provides that:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
...
(2) ... by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or ...

**4.** A hypothetical might illustrate how the plaintiff's theory violates the appropriate due process

In support of this proposition, Unidyne relies primarily on two cases,[5] *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir.1981); and *Bankers Trust Co. v. Worldwide Transp. Services*, 537 F.Supp. 1101 (E.D.Ark.1982).

*Texas Trading*, while giving other portions of the Act exhaustive and well-reasoned analysis, simply states, in a conclusory fashion that "[s]ince service was made under § 1608, the relevant area in delineating contacts, is the entire United States, not merely New York." *Texas Trading*, 647 F.2d at 314. In support, the Court cited three cases, all of which pre-date the FSIA, none of which are on point.

The Court in *Banker's Trust* gave considerable attention to the question now before this Court. The Court decided that the "national contacts" test was mandated for several reasons. First, the Court noted that "nothing whatsoever in the wording of the Act ... indicate[s] that any one state, as opposed to the whole country should be utilized as the forum for the purpose of determining jurisdiction." *Banker's Trust*, 537 F.Supp. at 1108. Congress, however, did indicate that the minimum contacts doctrine of *International Shoe, supra,* was to be embodied in the Act. *See* legislative history, 94th Cong., 2d Sess. 13 (1976) *reprinted in* 5 U.S. Code Cong. & Admin. News 6604, 6612 (1976). Since this doctrine has always been applied with the states, and not the nation, as the operative

jurisdiction, even with respect to alien corporations, *see, e.g. Gkiafis v. Steamship Yiosonas*, 342 F.2d 546, 550 n. 7 (4th Cir. 1965), this Court finds that Congress' silence militates against the conclusion reached by the Court in *Banker's Trust.*

The Court in *Banker's Trust* was also concerned that an FSIA defendant might order its American commercial activities in such a way as to escape accountability altogether, i.e., lack minimum contacts with any one jurisdiction even though its national or aggregate contacts were numerous. While such a situation seems almost inconceivable,[6] this hypothetical defendant would probably be amenable to suit in any of those jurisdictions in which it had *some* contacts; such a suit would comport with notions of fair play and substantial justice, *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, and would be within the pale of foreseeability from the defendant's perspective. *See World Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Whatever theoretical allure this argument may have, we note that in the present case, the defendant has systematic and continuous business relations in New York and an agent in Washington, D.C. Therefore, this Court, under these facts, finds that the defendant is present in the District of Columbia and in New York for purposes of suit.

Finally, the Court in *Banker's Trust* indicated that the minimum contacts rule as

standard. Assume company A is an agency or instrumentality of the sovereign Republic of Congo. Company A sends a piece of equipment for repair to company B in Christiansted, Virgin Islands. This is the only contact company A has ever had with any U.S. jurisdiction. Company B, without the instructions, approval or even knowledge of company A, sends the equipment to company X in Anchorage, Alaska. Under plaintiff's theory, company A would be required to defend an action filed by company X in Anchorage, or in Honolulu, or any other federal district plaintiff chooses.

**5.** The plaintiff also cites *Gemini Shipping v. Foreign Trade Org'n, etc.*, 647 F.2d 317 (2d Cir. 1981), a companion case to *Texas Trading* discussed *infra, Sugarman v. Aeromexico, Inc.*, 626 F.2d 270 (3d Cir.1980), which is simply not on point and two district court cases. *Chicago*

*Bridge and Iron Co. v. Islamic Republic of Iran*, 506 F.Supp. 981 (N.D.Ill.1980) does not discuss the constitutional problems inherent in the "national contacts" standard because it was not before the Court. The case dealt only with the presence or absence of immunity under 28 U.S.C. § 1605; any mention of personal jurisdiction is mere *obiter dicta. Upton v. Empire of Iran*, 459 F.Supp. 264 (D.D.C.1978), likewise dealt only with the subject matter jurisdiction of the Court. Since this jurisdiction was lacking, the Court never really addressed the personal jurisdiction issue.

**6.** The U.S. Supreme Court has held that one purposeful contact with a state may be sufficient to give a Court personal jurisdiction over a defendant if that contact gives rise to the suit. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

traditionally applied is grounded in federalism concerns that are not applicable in the FSIA context. This theory of personal jurisdiction has since been expressly repudiated by the Supreme Court in *Insurance Corp. of Ireland v. Compagnie des Bauxites,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982). The only sources of the personal jurisdiction doctrine are the due process guarantees of the federal constitution. *Id.* at 703, n. 10, 102 S.Ct. at 2104, n. 10. *See also, Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416 n. 7 (9th Cir.1977).

 This Court, therefore, is not persuaded that it should adopt a "national contacts" approach to personal jurisdiction under the FSIA. An FSIA defendant is entitled to the same constitutional protections in this Court as an out-of-state corporation, as outlined in *World Wide Volkswagen v. Woodson, supra,* or other alien corporations, as outlined in *Insurance Corp. of Ireland v. Compagnie des Bauxites, supra. C.f. Verlandra v. Regie Nationale Des Usines Renault,* 336 F.2d 292, 294 n. 7 (6th Cir.1964); *Gkiafis v. Steamship Yiosonas,* 342 F.2d 546 (4th Cir.1965) (using this analysis in non-FSIA context).

In *Unidyne One,* this Court found that the defendant had no office or agent in Virginia. Further, A.A. has never flown into Virginia. The conversations between A.A. and Unidyne concerning the C–4 appear to be the only contacts the defendant has ever had with the state. In order to exercise personal jurisdiction over the defendant, this Court must find that A.A. has purposefully availed itself of the benefits and protections of the laws of Virginia. *See World Wide Volkswagen, supra.* Mere negotiations, however, are not sufficient to constitute purposeful activity for personal jurisdiction purposes. *See, e.g., Williams Crane & Rigging, Inc. v. B & L Systems, Ltd.,* 466 F.Supp. 956 (E.D.Va. 1979). For this Court to exercise jurisdiction over a defendant who has no significant relationship with Virginia would violate the principles of fair play and justice on which the "minimum contact" doctrine

is based. The Court, however, is concerned that this decision, based on notions of fair play, may adversely impact Unidyne in pursuing what it, in good faith, believes to be a valid claim against the defendant. Deeming it to be in the interest of justice, this Court will refrain from dismissing this action for twenty (20) days from the date of this opinion so that the plaintiff, if it desires, may file a motion under 28 U.S.C. § 1404(a) to transfer this case to a forum where *in personam* jurisdiction over the defendant may be had, *see Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), or obtain a stay of action by this Court in order to pursue an appeal or both.

IT IS SO ORDERED.