# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ADAM-CHRISTIAN COMPANY, INC. v. E. P. McGAVOCK, W. L. WALTERS AND MEADE C. LOVING.

### March 17, 1927.

1. CONTRACTS—*Construction—Contract between Manufacturer and Agents for Sale of the Concentrates—Case at Bar.*—The instant case was an action against defendant, a manufacturer of concentrates, by plaintiffs, agents for the sale of its products. Under a written contract plaintiffs were "to organize and promote Indian Rock bottling plants or companies, and individuals," and were to receive a stipulated commission on sales to the companies so organized. Plaintiffs failed to organize such companies, but succeeded in interesting an established company in the specified territory in the purchase of the concentrates. It was the contention of defendant that the sale of concentrates to the established company was within the provisions of the written contract.

   *Held:* That as the sales were to an established company and not to a company organized under the contract by the plaintiffs, the sales did not fall within the written contract.

2. CONTRACTS—*Construction—Contract between Manufacturer and Agents for Sale of Concentrates—Amendment—Case at Bar.*—The instant case was an action by agents of a manufacturer of concentrates for commissions on sales by the manufacturer to a certain corporation. There was a written contract between plaintiffs and defendant but the sales in question were not embraced by the contract.

   *Held:* That having determined that the contract did not embrace the sale in question, the question of an amendment of that contract was of no concern.

3. CONTRACTS—*Meeting of Minds—Construction—Contract between Manufacturer and Agents for Sale of the Concentrates—Express Contract—Case at Bar.*—The instant case was an action by agents of a manufacturer of concentrates for commissions on sales by the manufacturer to a certain corporation. Plaintiffs contended that there was an express contract under which defendant should pay plaintiffs the sum of one dollar ($1.00) per gallon on all concentrates sold the company in question. One of the plaintiffs testified that he sought to consummate such an agreement with the president of defendant, and that the president told him that he would take the matter up with his board and would

recommend it to the board, and to go on and get the order. He further testified that he told the president that he did not believe that the question of taking it up with the board was material. The president testified that he did not agree to the compensation asked for and that he did not take the matter up with "the company" but relied upon the terms of the written contract between the parties.

*Held:* That the evidence fell short of establishing an express contract. The condition that the president should take the matter up with the company was never fulfilled and the minds of the parties never met.

4. CONTRACTS—*Construction—Contract between Manufacturer and Agents for Sale of the Concentrates—Quantum Meruit—Plaintiff Relying both on Express Contract and Implied Contract—Case at Bar.*—The instant case was an action by the agents of a manufacturer of concentrates for commissions on sales of concentrates to a certain corporation. Plaintiffs relied upon an express contract but also rested their right to recover on an implied ·contract under the common counts of assumpsit. Counsel for plaintiffs at the trial sought to set up the express contract but this did not change the legal right to recover upon an implied contract, if the jury should take a different view— and same was sustained by the evidence. The pleadings were sufficiently broad to embrace the issue.

5. APPEAL AND ERROR—*Instructions—Error in Giving and Refusing Instructions—Case Correctly Decided on the Merits.*—Where the Supreme Court of Appeals decided that a case has been correctly decided on the merits, a discussion of whether ‘or not there was error in giving and refusing instructions is unnecessary under section 6331 of the Code of 1919.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of assumpsit. Judgment for Plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*George Bryan* and *Allen G. Collins,* for the plaintiff in .error.

*Tucker & Bronson* and *D. J. Mays,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court. ·

The defendants in error (hereinafter called plaintiffs) filed their action of trespass on the case in assumpsit against the plaintiff in error (hereinafter called defendant) to recover the sum of $25,000. Upon a trial, the jury found a verdict in favor of the plaintiffs for $1,748, and, on motion of the defendant to set aside the verdict, the court reduced the amount to $1,433, and entered judgment accordingly.

The first count in the declaration charges a breach of a modified written contract as follows: "Heretofore, to-wit, on the 12th day of March, 1924, by a certain contract in writing of that date and by modifications and amendments of said contract subsequently made by the mutual agreement of the parties, the said plaintiffs undertook and agreed to use their efforts to organize in certain territory, in said contract specified, bottling plants for the manufacture of ginger ale and other soft drinks from concentrates produced by the said defendant, and to sell to the bottling plants so organized and to other existing bottlers the concentrates and other products manufactured by the said defendant, and the said plaintiffs further agreed to expend certain sums in said contract specified in securing business for the said defendant, and the said defendant on its part undertook and agreed that the plaintiffs should have the exclusive privilege of organizing bottling plants for the utilization of defendant's products in the territory in said contract specified and undertook and agreed to pay to the said plaintiffs for their services aforesaid a commission of ten (10) per cent of the selling price on all sales of defendant's products made to customers produced by them during the life of said agreement, and in addition the further specific sum of one dollar ($1.00) per gallon on all sales of defendant's products made to customers pro-

duced by them during the life of such agreement, whether such sales were made through plaintiffs or directly by the defendant."

Then follow the common law counts; goods sold and delivered; work done; money paid for the use of the defendant; money had and received; and account.

The defendant, located in the city of Richmond, was engaged in the manufacture of extracts and concentrates used as flavors for soft drinks, particularly ginger ale.

On March 12, 1924, the defendant and plaintiffs, as parties of the first and second parts, respectively, entered into the following contract:

"Witnesseth: That the first party grants and the second parties accept the exclusive privilege to organize and promote Indian Rock bottling plants or companies, and individuals, Concentrated Indian Rock Ginger Ale and other concentrated Indian Rock products in the territory of New York State, New York City, New Jersey, Pennsylvania, Delaware and Maryland.

"It is mutually understood and agreed that for a period of three months while the second parties are endeavoring to carry out this contract, the first party will not contract with any other parties to organize such bottling plants or companies in any other territory.

"The first party will extend and enlarge the territory to other fields selected by the said second parties, provided said second parties are successful in organizing such companies whose contracts are being lived up to within the above designated territory.

"Such new territory shall be agreed upon and there must be active work done within such territory within sixty days after the territory is agreed upon. The

territory now worked by the first party shall not be included herein.

"It is mutually agreed that the price at which Indian Rock Concentrated Ginger Ale and other concentrated Indian Rock products will be sold to the bottler above referred to will be the price at which the first party sells to the bottlers under their regular license contracts, and the said first party will maintain a uniform price to bottlers and guarantees to maintain the quality of the goods.

"It is agreed that any company organized by the second party will make a separate contract or license with the first party upon terms and conditions of their regular license contract with bottlers then pertaining, it being understood that such contracts made will continue in force as long as bottlers faithfully perform all requirements of their contract.

"The minimum quantities required to be purchased are based upon the population of the city or county in which the plant is located and are twenty-five gallons per month to each 100,000 of population of said city or county.

"When an order has been accepted by the first party for specific quantities of concentrate under this contract, it will assume all responsibility for the shipment and for the collection of all monies due on account of same.

"In the event that said second parties in the territory allotted to them, do not, at any time, make reasonable progress by doing business satisfactory to said first party, then said first party shall have the privilege of cancelling this contract in whole or in part, after thirty days' notice to said second parties, or either of them. Should a question of what is reasonable progress arise, the same shall be settled by arbitra-

tion, the first party selecting one arbitrator, the second parties selecting one and those two selecting an umpire, and the decision of the majority to determine.

"It is agreed by the second parties that they will put up or cause to be put up not less than $500.00 within fifteen days and up to $10,000, as the business may need it, and to use that money at once and their best efforts in the prosecution of this contract, and they will procure immediately an active representative in New York City or elsewhere to represent them.

"In the event that said second parties have expended $500.00 as above provided and at the end of three months this contract is cancelled, then said second parties shall not be required to put up the additional $9,500.00 or any part thereof.

"The first party agrees to pay the second parties, during the life of this agreement, a commission of fifteen per centum on the net amount of money received by first party from sales made to such companies organized by said second parties, whether the sales be made by said second parties or direct to the companies so organized, so long as said territory is covered as above, and such companies faithfully perform all requirements of their contracts. Commissions to be payable on the 10th day of each month covering receipts of the previous month."

Pursuant to this agreement, plaintiff endeavored, without success, "to organize and promote Indian Rock bottling plants or companies, and individuals," in the territory designated in the contract.

Plaintiffs were also engaged, under the terms of a verbal contract with defendant, to effect a merger of the Adam-Christian Company, Inc., The Broad Rock Company of Richmond, and the Indian Rock Company of New York.

9

While endeavoring to effect this merger, plaintiffs came in contact with A. L. Van Patten and Charles G. Wright, members of the firm of Van Patten and Company, an advertising firm of New York City. Van Patten and Wright were directors of the Silver King Mineral Water Company of New York, which was closely related to the Waukesha Silurian Water Company of Waukesha Springs, Wisconsin.

Through an agreement with Van Patten and Wright, plaintiffs succeeded in interesting the Silver King Company in the purchase of concentrate to be used in the manufacture of ginger ale at the Waukesha plant.

While the Silver King Company declined to enter into a specific contract for the purchase of a designated amount of concentrate per annum, it did, during the succeeding year, purchase a large quantity of the concentrate from the defendant.

Claim to commissions on the sale of the concentrate by the defendant to the Silver Springs Company forms the basis of this action.

Plaintiffs claim: (a) That, by reason of a verbal modification of the written contract, defendant agreed to pay them the sum of one dollar per gallon on all concentrate sold by it to the Silver King Company; (b) that, if defendant did not agree to a modification of the written contract, then it is due the plaintiffs the sum claimed upon an implied assumpsit.

The defendant denies any modification of the written contract and also denies any implied promise to pay the sum demanded, and relies absolutely on the terms of the written contract.

It is the contention of the defendant that the sale of concentrate to the Silver King Company falls within the provisions of the written contract relating to the

organization of bottling plants or companies in the territory specified in the contract.

[1] We do not so construe the contract. The contract, we think, clearly provides for the organization of new plants to be known as "Indian Rock Bottling Plants" and sales to "such companies" of the concentrate, etc., in New York, etc.

The evidence discloses that the Silver King Mineral Water Company was an established concern; whether it theretofore bottled ginger ale is not disclosed by the record. The contract, *supra,* provides that the defendant will not contract, during the life of the contract, with "any other parties to organize such *bottling plants or companies* in any other territory;" it further provides for sales at an agreed price to the bottlers and guarantees that the defendant will maintain the quality of the goods; it also provides that any company organized by the plaintiffs will make a separate contract with defendant upon terms and conditions then pertaining with other bottlers.

This construction of the contract is fortified by the construction placed thereon by the defendant in its petition for a writ of error. There it is said:

"Before going to New York, the plaintiffs entered into a written contract with defendant, dated March 12, 1924, by which it was agreed as follows:

"The plaintiffs agreed to put up not less than $500 and up to $10,000 as the business may need it, and to use that money and their best efforts in the prosecution of that contract in the territory allotted to them. The defendant agreed to give to the plaintiffs the *exclusive privilege to organize and promote Indian Rock Bottling Plants or Companies, and to sell the said companies Concentrated Indian Rock Ginger Ale in a specified territory,* and to pay the plaintiffs during the

life of that agreement a commission of fifteen per centum on monies received from the sale of *such companies organized by plaintiffs* so long as the said territory is covered.

"The plaintiffs, or some of the plaintiffs, went to New York and devoted their time and money *in an effort to organizing a corporation, but failed in this.*

"*After plaintiffs failed to organize a corporation they* addressed their attention to the sale of concentrate, and they assigned two-thirds (10%) of their commission to Van Patten and Wright, advertising agents, and through them plaintiffs got in touch with Silver King Mineral Water Company of New York, which company was then selling carbonated water bottled for it by Waukesha Silurian Water Company, of Washesha, Wisconsin." (Italics added.)

It being thus conceded by the language employed that the plaintiffs "failed to organize a corporation" and then "addressed their attention to the sale of concentrate," we think that this precludes a different construction of the contract.

[2] Having determined that the contract does not embrace the Silver King Corporation, the question of an amendment of the same is of no concern.

[3] We come now to a consideration of the question: Did the parties enter into an express contract by which it was agreed that the defendant would pay the plaintiff the sum of one dollar per gallon on all concentrate sold the Silver King Company?

The determination of this question depends in the main upon the evidence of W. L. Walters, one of the plaintiffs, and H. B. Christian, president of the defendant. Walters stated that, both by letter and by conversation, he sought to consummate an agreement with the defendant to increase the commissions upon

the sales of concentrate to the Silver King Company and in selling the concentrate to other concerns. His testimony on this score is as follows:

"We urged upon Mr. Christian the fact that it was necessary for us to have a margin that we could live on and make expenses in selling the goods. And we insisted upon the fact that he grant the additional fifty cents and make it a dollar per gallon; or approximately fifty cents. Mr. Christian said that he would take .the matter up with his board; to go on and get the order, and he would take the matter up with his board. I was so positive in the matter then and there, I just turned around and said: 'Horace, now I don't think the question of taking it up with your board will enter into it to any material extent, because I believe they are going to do what you say, and I want to know personally whether you are going to recommend that we get this one dollar per gallon.' And then he told me that he would."

Christian's version of this conversation is that he did not agree to the compensation asked for; that he did not take the matter up with "the company;" that he relied upon the terms of the written contract.

Giving to the testimony of Walters the full weight which the jury gave to it, we think it falls short of establishing an express contract. The condition that Christian would take the matter up with the company was never fulfilled; the minds of the parties never met; there was no express contract entered into by the corporation with the plaintiffs.

[4] There being no express contract upon which to base the action, were the plaintiffs, in the present state of the pleadings, entitled to recover under the evidence on an implied contract .of *quantum meruit?*

Defendant contends that the plaintiffs based their

action in assumpsit solely upon the written contract as amended. We are unable to concur in this contention.

Plaintiffs did base their right of action in the special count of the declaration upon the written contract as amended; but they also rest their right to recover on an implied contract, under the common counts of assumpsit.

That counsel for the plaintiffs sought in the trial to maintain their deep-seated conviction that there was an express contract, did not change the legal right to recover upon an implied contract, if the jury should take a different view—and same was sustained by the evidence. The pleadings were sufficiently broad to embrace such an issue.

Complaint is made that the verdict is not responsive to the issue joined. While the verdict is bad in form, we think it is good in substance.

[5] Objection is also made to the action of the court in giving and refusing instructions. In view of our conclusion that the case has been correctly decided on the merits, a discussion of the instructions in unnecessary.

Section 6331 of the Code, 1919, provides that where litigants have had a fair trial on the merits and substantial justice has been reached, the verdict of the jury and the judgment of the court entered thereon should be upheld.

We are of the opinion that the instant case falls within the provisions of this salutary section of the Code, and that the judgment of the trial court should be affirmed.

*Affirmed.*