## Richmond

### MARINE DEVELOPMENT CORPORATION

### v.

### EDWARD RODAK

March 11, 1983.

Record No. 801507.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

---

* Justice Thompson prepared and the court adopted the opinion in this case prior to the effective date of his retirement on March 2, 1983.

138

*Gregory S. Hooe (William H. Abeloff; Michael S. Shelton; Howard C. Vick, Jr.; Cohen, Abeloff & Staples, P.C.,* on brief), for appellant.

*John B. Thompson (Hugh T. Antrim; Thompson & McMullan,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal, we review the propriety of a recovery on *quantum meruit* and the trial court's granting of a jury instruction.

Edward Rodak is a design engineer with an extensive background in the field of commercial marine refrigeration. Prior to 1972, Marine Development Corporation (MDC) had been engaged primarily in the manufacture and marketing of air conditioning units for yachts. Due to its success in this field, and the fact that its opportunity for expansion and future growth there had become quite limited, MDC investigated the possibility of developing an additional product line of commercial marine refrigeration equipment. Seeking a chief project engineer for this venture, MDC contacted Rodak because of his expertise in this area and began negotiations with him. According to Rodak, MDC offered him a "living wage." Specifically, the proposal was that Rodak would be employed at a substandard salary with the understanding that once the new product line was developed, it would be transferred to a new corporation which would be owned by Rodak and MDC in proportion to the value of their respective contributions to development of the product. Rodak accepted the offer and went to work for MDC in June, 1972.

Rodak remained with MDC until April, 1978. During that time, he designed and developed a new line of commercial refrigeration products suited for fishing boats. Rodak also set up the manufacturing facilities and supervised the manufacture of this refrigeration equipment.

In 1977, MDC organized a subsidiary corporation known as Commercial Marine Products (CMP) to which it transferred the marketing right to the new product line. The manufacturing rights, however, were retained by MDC. Rodak objected, insisting

that this reorganization did not comport with MDC's earlier promise to transfer the entire commercial marine refrigeration operation to a new company. When MDC refused to modify the arrangement and offered Rodak only a 15% stock ownership in CMP, Rodak resigned and instituted the present suit.

In his motion for judgment, Rodak, pleading in the alternative, claimed in Count I that MDC had breached its oral contract and in Count II that MDC was liable to him on a *quantum meruit* basis. MDC denied these allegations in its grounds of defense, claiming that the annual salary which had been paid to Rodak was the only compensation to which he was entitled. During the presentation of Rodak's evidence, the court ruled *sua sponte* that, as a matter of law, there was no express contract. Count II, the issue of *quantum meruit,* was submitted to a jury which, at the end of the four-day trial, returned a verdict for Rodak in the amount of $170,000. The trial court entered judgment on the verdict, and MDC now contends that the trial court erred in: (1) submitting the *quantum meruit* claim to the jury, and (2) granting instruction number 7. We reject both contentions and affirm the judgment of the trial court.

## I. *Quantum Meruit.*

As to the appropriateness of Rodak's recovery on *quantum meruit,* there can be little doubt. In *Hendrickson* v. *Meredith,* 161 Va. 193, 198, 170 S.E. 602, 604 (1933), we said:

> It is a general rule of law that he who gains the labor . . . of another must make reasonable compensation for the same. Hence, when one furnishes labor to another under a contract which, for reasons not prejudicial to the former, is void and of no effect, he may recover the value of his services on a *quantum meruit.* [Citation omitted.]

*See also Cochran* v. *Bise,* 197 Va. 483, 90 S.E.2d 178 (1955); *Burke* v. *Gale,* 193 Va. 130, 67 S.E.2d 917 (1951); *Ricks* v. *Sumler,* 179 Va. 571, 19 S.E.2d 889 (1942); and *Adam-Christian* v. *McGavock,* 147 Va. 252, 137 S.E. 374 (1927).

In this same vein, we approve the conclusions of the Kansas Supreme Court in *Brakensiek* v. *Shaffer,* 203 Kan. 817, 821-822, 457 P.2d 511, 514-515 (1969):

Contract: Quantum Meruit. Where the parties contract for the doing of certain work, and the work is done and accepted, and it appears that there was a misunderstanding as to the price to be paid for it, the law rejects the understanding of each, and awards reasonable compensation.

. . . .

However, after services . . . have been furnished and accepted, the fact that no price had been agreed on or that the compensation mentioned . . . is too indefinite does not prevent the recovery of reasonable compensation.

Here, after the trial court's ruling that no express contract between MDC and Rodak was proven, the sole remaining issue was the *quantum meruit* claim raised in Count II of the motion for judgment.[1] Under the pleadings and evidence presented, the issue whether Rodak was entitled to recover the value of the services he provided to MDC was clearly a jury question, and the trial court was correct in submitting the case to the jury on Count II.

## II. *Instruction number 7.*

 MDC argues that the trial court should not have given instruction number 7 and correctly points out that the first two sentences were criticized in *Hendrickson* v. *Meredith, supra.*[2]

---

[1] The ruling that no express contract had been proven is not before us for review.

[2] For purposes of comparison, the instruction in *Hendrickson* and instruction number 7 in the instant case are listed below:

### *Hendrickson*

The court instructs the jury that an implied contract is created by law to establish justice between parties. It does not require mutual assent, but may bind a party against his will. And the court further instructs the jury that if they believe by a preponderance of the evidence that . . . Meredith performed services of value for . . . deceased, at any time within three years prior to . . . [his] death, for which no certain compensation was agreed on, and the said . . . [deceased] accepted and profited by such services, then it shall be your duty to find for the plaintiff . . . in such an amount as you may think said

### *MDC v. Rodak*

The court instructs the jury that an implied contract is created by law to establish justice between the parties. It does not require mutual assent, but may bind a party against his will. The court therefore further instructs the jury that if they believe by a preponderance of the evidence that . . . Rodak performed services for which no definite compensation was agreed upon, and [MDC] accepted such services, then you shall find your verdict for . . . Rodak in such amount as you may think such services were reasonably worth less the amount of compensation actually paid to . . . Rodak by [MDC].

There, Meredith brought an action against the estate of the deceased, seeking to recover the value of the services she rendered during the last several years of his life. At trial, the only matter in dispute was whether the deceased had promised Meredith that, in addition to paying her $2.50 per week and furnishing her board and clothing, he would make provision for her and provide her a home as long as she lived.

In discussing these two sentences of the sole jury instruction given by the trial court in *Hendrickson,* we stated:

> The object of all principles or rules of law promulgated is to do justice between contending parties. If that is the interpretation of the first sentence in the instruction it is correct. There are quasi contracts, or "contracts implied in law," in which the assent of the parties is immaterial. In such cases the liability exists from an implication of law that arises from the facts and circumstances, independent of agreement or presumed intention. In such cases, the promise is implied from the consideration received, there the legal duty imposed upon the defendant defines the contract. [Citations omitted.]
>
> But the facts do not bring this case within this class of quasi contracts. It belongs to that class of cases usually referred to by text writers as "contracts implied in fact," and the only difference between an express contract and a contract implied in fact is that in the former all of the terms and conditions are expressed between the parties, while in the latter some of the terms and conditions are implied in law from the conduct of the parties. Thus: "Where one renders services for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what the services are reasonably worth, unless it can be inferred from the circumstances that the services were to be rendered without compensation." [Citations omitted.]
>
> Without further discussion, these authorities are sufficient to show that, even as abstract propositions of law, the princi-

---

services were reasonably worth to the said . . . deceased.

If you believe from the evidence that Rodak came to work for [MCD] for an agreed upon salary, or that the conduct of the parties created a contract for a definite salary, then you shall find for [MDC].

ples enunciated in that part of the instruction quoted are not fully stated, and even if they were, they are abstract principles which have a tendency to confuse, rather than to clarify, the issue to be decided by the jury.

*Id.* at 200-201, 170 S.E. at 605.

■ Against this background, we turn to an analysis of instruction number 7. On brief, MDC initially contends that, due to the inclusion of the two sentences found in the *Hendrickson* instruction, this instruction suffers the same infirmities. We disagree.

We acknowledge that in *Hendrickson* we criticized the first two sentences of the instruction there involved. It is obvious from our reading of instruction number 7, however, that the objections raised in *Hendrickson* are inapplicable in the circumstances of this case.

First, unlike its counterpart in *Hendrickson*, MDC's position was adequately covered by the inclusion of the last paragraph of the instruction. The jury was clearly instructed that it could find that the agreement between MDC and Rodak either included additional undetermined compensation beyond Rodak's salary or it was limited to the salary alone.[3]

Second, in addition to instruction number 7, the substantive law of *quantum meruit* was explicated in two other instructions. One instruction listed criteria from which the jury could ascertain the value of Rodak's services, while the other informed the jury how to deal with the significance of profit or lack thereof to MDC resulting from Rodak's services.

Third, there is no contention of a quasi contract or a contract implied in law in the instant case. Although MDC suggests that instruction number 7 could be misinterpreted by the jury to require that MDC pay to Rodak the reasonable value of his services without a finding that this additional compensation beyond the salary was agreed to, we conclude otherwise. Implicit in any verdict for Rodak based upon *quantum meruit* was a finding that something more than a salary had been promised. The instruction's first two sentences were statements of abstract propositions entirely extraneous to the issues raised by the pleadings. In *Burks v. Webb,* 199 Va. 296, 309-10, 99 S.E.2d 629, 640 (1957), we said:

---

[3] Perceiving no error, we need not address MDC's additional argument that the instruction's references to "definite compensation" and "agreed upon" salary are misleading.

The long established rule of this Court is that: "All instructions must be read in the light of the evidence, and if when so read they are not misleading, technical errors as to abstract propositions are not regarded as prejudicial." [Citations omitted.]

■ MDC asserts that the instructions failed to require that MDC needed to derive some benefit from the services rendered by Rodak. As Rodak points out, this argument overlooks the following statement in *Hendrickson*: "The measure of recovery is the reasonable value of the services performed, and not the amount of benefit which actually accrued from them to him for whom they were performed." *Hendrickson* v. *Meredith,* 161 Va. at 202, 170 S.E. at 605 (citation omitted).

■ Finally, MDC asserts that Rodak should not be allowed to recover more under *quantum meruit* than he would have under the express contract alleged in Count I. We find this argument untenable and again point to our quotation from *Brakensiek* v. *Shaffer, supra.*

Finding no reversible error in the court below, we will affirm the judgment.

*Affirmed.*