## CIRCUIT COURT OF FAIRFAX COUNTY

Hitachi Systems Corp.

v.

webMethods, Inc.

May 7, 2002

Case No. (Law) 197868

BY JUDGE STANLEY P. KLEIN

Defendant webMethods, Inc. ("webMethods") demurs to all three counts of Plaintiff's Amended Motion for Judgment ("AMFJ") contending that the claims are premised upon terms not set forth in the contracts between the parties. Plaintiff Hitachi Data Systems Corporation ("Hitachi") responds that its claims are legally cognizable, as the intent of the parties governs the interpretation of their contracts; or, in the alternative, that webMethods has been unjustly enriched by sums paid, materials provided, and services rendered by Hitachi. For the reasons set forth in this opinion letter, the demurrer is overruled as to all three counts of the AMFJ.

### I. *Background*

This case involves an alleged breach of contract between two software companies. Hitachi is a Delaware corporation with its principal place of business in Santa Clara, California. webMethods is a Delaware corporation with its principal place of business in Fairfax, Virginia. webMethods agreed to develop B2B software ("B2B") for operation in a mainframe System 390 environment. B2B allows business-to-business activities over the Internet. Hitachi alleges that webMethods was to develop this software and Hitachi was to supply the resources for the development. Hitachi would then have a non-

exclusive license to market, distribute, sublicense, install, and demonstrate this, as well as other, software.

After several months of negotiations, in January 2000, the parties signed three licensing agreements giving Hitachi the licenses to existing software developed by webMethods. Hitachi claims that these contracts were necessary to test whether webMethods' existing software would be compatible with the B2B software and to provide a basis for jointly developing/marketing the B2B software.

In April 2000, the parties entered into a System Integration and Reseller Agreement ("SIR Agreement"), which authorized Hitachi to resell the B2B software. The SIR Agreement principally concerned events subsequent to the creation of the software, but the language utilized in the contract did not expressly obligate webMethods to develop any software. Hitachi argues that the parties intended for the SIR Agreement to include the development of the software and that the software's creation and development were clearly implied in the SIR Agreement.

According to the AMFJ, after execution of this SIR Agreement, Hitachi and webMethods issued press releases and compiled a list of potential customers for the B2B software. In an e-mail dated July 31, 2000, a webMethods employee allegedly represented to Hitachi that the B2B software would be completed by October 2000. Thereafter, in an e-mail dated August 9, 2000, a second webMethods employee allegedly notified Hitachi that the B2B software had been completed. However, the software was never developed. In March 2001, webMethods announced that it was canceling efforts to develop the B2B software for mainframe computers.

On November 5, 2001, Hitachi filed an AMFJ[1] alleging three counts: (1) Breach of Contract with Implied Term; (2) Breach of Entire Contract Formed by Separate Contracts; and (3) Implied in Law/Quasi-Contractual Obligations. In count I, Hitachi asserts that pursuant to the SIR Agreement, webMethods "implicitly agreed to develop B2B S/390 software," (AMFJ at ¶ 65), and that webMethods' obligation to develop the software could be implied in the contract from the correspondence and course of dealing between the parties. (AMFJ at ¶ 66.) In count II, Hitachi avers that the parties intended to create an entire contract between the licensing agreements and the SIR Agreement, by

---

[1] On October 19, 2001, the court sustained webMethods' demurrer to counts I (breach of contract) and II (tortious interference with prospective or economic advantage) of Hitachi's original Motion for Judgment. The court also sustained webMethods' demurrer to Hitachi's claims for attorney's fees under both counts. Hitachi was granted leave to file an Amended Motion for Judgment within fifteen days of the order. The AMFJ was then timely filed.

which Hitachi would provide the environment, manpower, and location and webMethods would provide the development of the software. (AMFJ at ¶ 72.) In count III, Hitachi avers that, even in the absence of any contractual obligations of webMethods, webMethods has benefited from the payments, materials, and services rendered by Hitachi and that a quantum meruit recovery is appropriate. (AMFJ at ¶ 79.) Hitachi seeks total damages of $20,000,000.00.

## II. *Analysis*

In considering a demurrer, the court must apply the settled rule that a demurrer admits the truth of all well-pleaded material facts. *Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988). Under this rule, "the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). The sole question to be decided by the court is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state the causes of action alleged in the AMFJ. See *Thompson v. Skate America*, 261 Va. 121, 126, 540 S.E.2d 123 (2001).

### A. *Choice of Law*

Section 24.8 of the SIR Agreement reads as follows:

This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of California, without regard to its conflict of laws rules.

As a result, Hitachi contends the laws of California govern the court's interpretation and construction of the SIR Agreement and that this court must apply California law to its allegations that the SIR Agreement contains a promise that webMethods would develop the B2B software. Further, Hitachi argues that the parol evidence rule is a rule of substantive contract law; thus, its application is determined under California law rather than Virginia procedural law. webMethods does not deny the existence or validity of the conflict of law provision in the SIR Agreement. Rather, webMethods contends that the provision calls for California law to construe the SIR Agreement, and, here, there is no provision to construe. Moreover, webMethods asserts that Hitachi is also asking the court to construe the licensing agreements between

the parties in conjunction with the SIR Agreement to form a complete contract, and, as Virginia law governs the licensing agreements, Virginia law must apply. The court agrees with Hitachi.

The Commonwealth of Virginia recognizes choice of law and forum selection clauses bargained for between parties. See *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342, 397 S.E.2d 804 (1990) ("where parties to a contract have expressly declared that the agreement will be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction."); see also *Union Central Life Ins. Co. v. Pollard*, 94 Va. 146, 26 S.E. 421 (1896).

In the SIR Agreement between Hitachi and webMethods, the parties contractually agreed that California substantive law would govern construction and enforcement of its terms. Although the licensing agreements do not contain forum selection clauses, count II of the AMFJ in essence alleges that the licensing agreements have been integrated into the SIR Agreement forming a complete contract. Hence, California substantive law governs construction and enforcement of the terms of both the SIR Agreement and the integrated contract, including the implication of missing terms. Further, parol evidence is considered substantive law. See *Whitt v. Godwin*, 205 Va. 797, 802, 139 S.E.2d 841 ("The parol evidence rule is not one of evidence, as the expression might imply, but is in reality a rule of substantive law."). Thus, the substantive law of California also governs the admissibility of parol evidence in construing the SIR Agreement.

B. *Interpretation of the SIR Agreement under California Law*

webMethods contends that none of the contracts between the parties imposed any obligation on webMethods to develop the B2B software. It argues that Hitachi may not escape the express terms of the integrated contracts of the parties by asking the court to add a term to the contracts that the parties had not included. As the wording of the contracts is clear, webMethods asserts that parol evidence cannot be considered in determining whether the parties intended something other than the express terms of their contracts. Hitachi responds that the parties did, in fact, intend for webMethods to develop the B2B software and that their intent can be gleaned from the wording of their contracts and all of the surrounding circumstances. Hitachi further argues that under California law implied terms and covenants can be read into a contract. It asserts that under California law the court must consider parol evidence before determining whether an ambiguity exists in the contracts between the parties.

In *Wilson Arlington Co. v. Prudential Ins. Co. of Am.*, 912 F.2d 366 (9th Cir. 1990), the United States Court of Appeals analyzed the status of the parol evidence rule in Virginia and in California. It contrasted Virginia's strict adherence to the rule with California's near abolition of it. In Virginia, when contracting parties reduce their agreement to a written instrument that imposes an obligation in clear and explicit terms, the writing constitutes the sole memorial of the agreement and parol evidence is inadmissible to vary, contradict, add to, or explain the terms of the agreement. *Amos v. Coffey*, 228 Va. 88, 320 S.E.2d 335 (1984). In Virginia, "we adhere to the 'plain meaning' rule...." *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). "The guiding light ... is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Magann Corp. v. Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962).

California's highest court has taken virtually the complete opposite view of the appropriate scope of the parol evidence rule. In *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 442 P.2d 641, 69 Cal. Rptr. 561 (1968), the Supreme Court of California addressed the admissibility of extrinsic evidence to determine the meaning of an indemnity clause in the parties' contract. The trial court had refused to allow the introduction of any parol evidence based upon its conclusion that the "plain language" of the agreement required indemnification for injuries to plaintiff's property. The Supreme Court of California reversed, holding that:

> The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.

*Pacific Gas*, 69 Cal. 2d at 37, 442 P.2d at 644 (citations omitted). The Supreme Court of California explained in detail the rationale underlying its rejection of a "plain meaning" rule:

> When the court interprets a contract on this basis, it determines the meaning of the instrument in accordance with the "extrinsic evidence of the judge's own linguistic education and experience." The exclusion of testimony that might contradict the linguistic background of the judge reflects a judicial belief in the possibility of perfect

verbal expression. This belief is a remnant of a primitive faith in the inherent potency and inherent meaning of words....

A rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained....

Accordingly, the exclusion of relevant, extrinsic, evidence to explain the meaning of a written instrument could be justified only if it were feasible to determine the meaning the parties gave to the words from the instrument alone....

If words had absolute and constant referents, it might be possible to discover contractual intention in the words themselves and in the manner in which they were arranged. Words, however, do not have absolute and constant referents. "A word is a symbol of thought but has no arbitrary and fixed meaning like a symbol of algebra or chemistry." ...

Accordingly, the meaning of a writing "can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended." ...

Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties.

*Id.* at 36-40, 442 P.2d at 643-45 (citations omitted).

The Supreme Court of California's opinion in *Pacific Gas* has been the subject of judicial criticism and rejection.[2] Further, some lower California appellate courts have signaled their willingness to join any retreat from the holding in *Pacific Gas*.[3] However, although this court may also question the

_____

[2] *See, e.g., Wilson*, 912 F.2d at 370, n. 6 (noting that the shadow of commercial uncertainty created in *Pacific Gas* does not "reach all the way to Virginia"); *Trident Center v. Connecticut General Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988) ("While we have our doubts about the wisdom of *Pacific Gas*, we have no difficulty understanding its meaning, even without extrinsic evidence."); *Amos*, 228 Va. at 93 (rejecting rule announced in *Pacific Gas*).

[3] See *Bionghi v. Metropolitan Water Dist. of So. Cal.*, 70 Cal. App. 4th 1358, 1365, 83 Cal. Rptr. 2d 388, 393 (1999) (opining that *Pacific Gas* "is not a cloak

wisdom of the decision in *Pacific Gas*, it remains binding precedent in the State of California. Hence, Hitachi is entitled to introduce evidence of the circumstances surrounding the execution of the relevant agreements. The court must then examine the language utilized by the parties in their contracts in the context of those circumstances in attempting to ascertain the intent of Hitachi and webMethods. If the language is then susceptible to more than one meaning, parol evidence is admissible to prove either meaning. *Pacific Gas*, 442 P.2d at 646. As such, the court cannot decide this issue on demurrer when only the four corners of the contract can be examined. *Thompson v. Skate America, Inc.*, 261 Va. 121, 128 (2001); *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652 (1991). Accordingly, webMethods demurrer to counts I and II of the Amended Motion for Judgment must be overruled.

In the event that either webMethods or Hitachi contends that the language of their integrated contract and/or the SIR Agreement will be susceptible to only one interpretation after consideration of the circumstances surrounding the execution of the contracts, a pre-trial evidentiary hearing may be necessary to determine whether parol evidence will be admissible for the jury's consideration at trial.

### C. *Implied in Law/Quasi-Contractual Claim*

In count III: Implied in Law/Quasi-Contractual Obligations, Hitachi contends that webMethods received a "benefit from Hitachi in the form of payments, materials, and services rendered to webMethods at Hitachi's expense." (AMFJ at ¶ 79.) As a result, Hitachi asserts that it is entitled to a quantum meruit recovery. webMethods responds that Hitachi may not recover in quantum meruit because the money paid and services performed were pursuant to the agreements between the parties, thereby precluding any finding of a quasi-contract.

Virginia recognizes a quasi-contract action for recovery based upon unjust enrichment. See *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363 (1983) (quasi-contract insures "that a man shall not be allowed to enrich himself unjustly at the expense of another") (quoting *Rinehart v. Pirkey*, 126 Va. 346,

---

under which a party can smuggle extrinsic evidence to add a term to an integrated contract, in defeat of the parol evidence rule," but still conducting two step *Pacific Gas* analysis); see also *Ratcliff Architects v. Vanir Construction Mgmt., Inc.*, 88 Cal. App. 4th 595, 106 Cal. Rptr. 2d 1 (2001); *MC Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 93 Cal. Rptr. 2d 846 (2000); *Vikco Ins. Servs., Inc. v. Ohio Indemnity Co.*, 70 Cal. App. 4th 55, 82 Cal. Rptr. 2d 442 (1999).

351, 101 S.E. 353 (1919)). A quasi-contract is not a contract at all but rather is a plaintiff's equitable remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, where the facts fail to establish that the parties established any form of agreement. See *Marine Devel. Corp. v. Rodak*, 225 Va. 137, 300 S.E.2d 763 (1983). However, the Supreme Court of Virginia has held that "an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter." *Southern Biscuit Co. v. Lloyd*, 174 Va. 299, 311, 6 S.E.2d 601 (1940); see also *Marine Development*, 225 Va. at 140 (stating that, after the trial court ruled that no express contract between the parties was proven, the issue then became the claim for recovery on quantum meruit); *Ellis and Meyers Lumber Co. v. Hubbard*, 123 Va. 481, 501-02, 96 S.E. 754 (1918) ("It is only in the absence of an express or of an enforceable contract between parties, that the law (whether at law or in equity) will, from circumstances, imply a contract between them.").

At the demurrer stage, the court is required to view the plaintiff's allegations and all inferences fairly deducible therefrom in the light most favorable to Hitachi. See *CaterCorp*, 246 Va. at 24. In paragraphs 79, 80, and 81 of its Amended Motion for Judgment, Hitachi alleges that webMethods "requested that Hitachi provide materials and services related to the development and marketing of the B2B S/390 software" and that Hitachi, in response, provided benefits to webMethods in the form of payments, materials, and services relating to the development of the B2B software. webMethods claims that development of the B2B software was not a subject of the contracts between the parties. If the trier of fact agrees with webMethods' position, a quantum meruit recovery may therefore be appropriate based upon the allegations in count III. Consequently, the demurrer to this count must also be overruled.

## III. *Conclusion*

After full consideration of the pleadings herein, the arguments of counsel, and the applicable authorities, webMethods' demurrer to all three counts of the Amended Motion for Judgment is overruled. webMethods is therefore ordered to file its Grounds of Defense on or before May 21, 2002.