**CIRCUIT COURT OF ORANGE COUNTY**

Cornerstone Construction
Services, L.L.C.

v.

Jason C. Davison

November 3, 2010

Case No. CL07-000181

By Judge Daniel R. Bouton

This case is before the court for a ruling on all disputed issues. A trial was conducted on July 12th, July 13th, and August 18th. Subsequent to the completion of the ore tenus hearing, counsel submitted written arguments in support of their respective positions. The court has now had an opportunity to review the evidence, study the trial exhibits, and give consideration to the arguments of counsel. I am writing to advise you as to how the disputed issues will be resolved.

*Cornerstone's Claim for Damages under the Contract*

Cornerstone's claim here is premised on the refusal of Davison to pay the fifth and final draw. Prior to the request for payment, the parties had worked together on the project in a reasonably cooperative way. All previous draws had been paid without any major disputes or disagreements. Davison explained at trial why he refused to pay the final draw. However, it is not necessary for the court to analyze his testimony on this point for two reasons. First, Cornerstone failed to prove that it complied with the contractual conditions that had to be satisfied before Davison was obligated to pay the draw. Second, Cornerstone's evidence on its damage claim is not sufficient for an award.

With regard to the contract, three conditions had to be met before Davison was required to make any payment. First, the contract states that receipts "for all of the above transactions shall be given to the owner periodically in order to make draws." In the court's view, the only sensible way to construe the "above transactions" clause of the contract is for it to refer to and incorporate the preceding provisions on out of pocket expenses. Here, Davison's obligation was to "reimburse the GC for any out of pocket expenses incurred relating to this project." Therefore, "periodically" producing the receipts for out of pocket expenses was Cornerstone's duty under the contract. Cornerstone's second obligation was to provide Davison with "receipts for all labor, material, equipment, subcontractors, or any other direct cost." Third, Cornerstone had to furnish Davison with an "updated schedule." Once Cornerstone supplied Davison with all of the documents covered by these three provisions of the contract, the conditions for the payment of the draw would be satisfied. Davison would then be required to make payment within five days.

The court will now turn its attention to the evidence that Cornerstone introduced regarding what it turned over to Davison before demanding that he pay the final draw. Specifically, at trial, Cornerstone produced the following documents: the contract, an expense summary, and a "stop work" letter. Nevertheless, with regard to the conditions pertaining to the disputed draw, the plaintiff did not introduce any receipts for out of pocket expenses that were delivered to Davison prior to the request for payment. Furthermore, no evidence of any receipts for labor, materials, subcontractors, or any other direct cost was produced. Finally, there was no proof that Davison was furnished with an updated schedule. Witnesses for Cornerstone testified that Davison was given "everything" that was available and that the company provided him with "all of the receipts." However, the court finds that these general statements do not prove that Cornerstone complied with the draw provisions of the contract. The court rejects this testimony as insufficient on this point. As a result, the court rules that Cornerstone did not prove that it supplied Davison with the specific items required by the contract and thus did not satisfy the conditions for the payment of the draw.

The second reason why Cornerstone is not entitled to any relief under the contract stems from the evidence on damages. Here, under Virginia law, a plaintiff seeking a recovery in a contract case is not required to prove the exact amount of his damages. Nevertheless, a plaintiff is not entitled to recover unless he elicits sufficient facts and circumstances that permit the trier of fact to make a reasonable estimate of the damages. *Clark v. Scott*, 258 Va. 296 (1999).

The only evidence presented to the court on damages is contained in Plaintiff's Exhibit 2. Yet this document is merely a summary sheet that contains a plethora of figures, many of which are unrelated to the fifth and final draw. The exhibit is filled with numbers and computations that have

little to do with what can be claimed under the contract. Significantly, the draw itself, or a copy of it, was never introduced at trial. Furthermore, the witnesses who testified for the plaintiff did not provide the court with credible information about the amount and the details of the draw. They did not explain how or whether the trial exhibit could be relied on to determine the amount of the draw and what damages, if any, could be attributed to the failure to pay it. The court is not required to review the trial exhibits and then guess whether some of the figures on it might comprise part of a damage award. Such an exercise would amount to judicial speculation, surmise, and conjecture. Rather, Cornerstone has the burden of proof on damages and must point or direct the court to specific evidence in the record that establishes a reasonable amount of damages. At best, the evidence here suggests that Davison might owe some additional money to the plaintiff. This is not sufficient proof for a damage award, however, and the company has failed to sustain its burden.

### *Davison's Counterclaim under the Contract*

The court will dismiss Davison's counterclaim for two reasons. First, the pleadings do not contain any theory of relief that can be based on the contract between the parties. Second, regardless of what Davison states in his pleadings, he has not produced sufficient evidence to prove any claim.

With regard to the pleadings, Davison's counterclaim asserts that he was "operating under strict budget requirements" and that he "needed to keep track of costs to avoid going over budget." Davison states that Cornerstone "failed to keep track of costs, resulting in a house costing $175,000.00 more to complete than originally anticipated." To begin with, it must be stressed that there is nothing in the contract about these allegations. Specifically, the contract does not include an agreed upon price, and it provides no remedy to Davison in the event that the house cost "more than he anticipated." A critical factor in this context is that the parties never negotiated or agreed on a set price for the construction of the home. Furthermore, there is no provision in the contract that required Cornerstone to take into account Davison's "strict budget requirements." The contract was a "cost plus fixed fee agreement," and either party could terminate it by giving the other side five days notice. As a result, the court finds that the duties that Davison claims were breached by Cornerstone were never part of the contract.

Next, in his trial brief, Davison argues that he made "overpayments" to Cornerstone and that he paid sums that were not properly documented based on the contract. However, these facts were not pleaded as a basis of the counterclaim. Therefore, the court may not consider them in determining whether Davison should prevail. This principle was cited by the Supreme Court of Virginia as part of its holding in *Ted Lansing*

*Supply v. Royal Aluminum*, 221 Va. 1139(1981). There, the court said: "It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed. . . . Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading." (citations omitted).

Finally, the counterclaim also alleges that Cornerstone failed to prepare a budget estimate that reflected the subcontractor costs; failed to provide an "updated schedule"; and did not "set forth the changes in the schedule and cost overruns." However, even if proven, these assertions would not give rise to an independent claim because the parties never reached a specific agreement on a final price for the construction of the home. On this issue, it should be noted that the contractual provisions regarding a budget analysis were part of Cornerstone's obligation to document certain items for Davison before his draw payments were due. Budget information also had to be prepared and supplied before construction could commence. Moreover, this information was to be used for discussion purposes in the event that the parties made any changes to the work. However, the contractual provisions regarding budget items do not include a method by which the price of the job or any part of it could be computed. They also provide no remedy or formula for damages if the information is not produced.

Furthermore, it should be noted that the "change in work" provisions of the contract were never formally implemented by the parties. Here, the contract states that "changes to the scope of work will be negotiated and agreed upon by both parties at the point of change." It also states that "a budget analysis will be performed prior to the changes and agreed upon by both parties prior to commencement of change." This can only mean that the parties would have available for their mutual use the budget information in deciding upon the specific price and the precise scope of any changes that might occur once the project had been started. However, this represents nothing more than an "agreement to agree" at some point in the future. At trial, there was no evidence that the parties actually agreed to any specific price changes. Thus, even if Cornerstone failed to provide the budget information, the contract and the evidence before the court establish no claim for Davison. As stressed previously, this was a "cost plus fixed fee agreement" and not a contract for a specific price.

The court also finds that Davison's counterclaim fails because he has not produced sufficient proof of any damages that were caused by Cornerstone's alleged breaches. At trial, he presented testimony that he performed and paid for some of the work that he was responsible for under the contract. He also said that he did the same thing to correct and complete some of the work that had been started by Cornerstone. Davison also offered testimony regarding payments that he made for items that were not part of the contract. On multiple occasions during his testimony,

however, he admitted that he made no effort to separate or distinguish these various charges. He and the contractor that he hired to complete the home performed a multitude of tasks, and they did not document or keep separate the fees, costs, labor, and expenses that were being claimed only against Cornerstone. As a result, the evidence does not establish what specific amount, if any, can be attributed to the alleged contractual breaches by Cornerstone. As the court pointed out in rejecting Cornerstone's contract claim, Davison is not required to prove the exact amount of his damages, yet he must show sufficient facts and circumstances that would allow the court to make a reasonable estimate of them. In particular, when there is evidence of damages or payments from several causes, a plaintiff must present evidence that will show within a reasonable degree of certainty the share for which the defendant is responsible. *TechDyn Sys. v. Whittaker Corp.*, 245 Va. 291 (1993). Davison has failed to do so in this case.

### *Cornerstone's Claim for Quantum Meruit Relief*

In evaluating this issue, it should first be noted that the court disagrees with Davison's interpretation of the law of quantum meruit in Virginia. In support of his position, Davison cites a number of cases where the Supreme Court of Virginia held that the remedy of quantum meruit is not available if there exists an enforceable express contract between the parties covering the same subject matter. Yet, at Davison's request, that is precisely how the court has ruled in this case. Specifically, Davison argued that there does not exist an enforceable contract that renders him liable for the fifth draw. The court found Davison's argument persuasive and ruled in his favor. Therefore, because there is no contract covering the subject matter of the dispute, the remedy of quantum meruit is not excluded from consideration.

In the court's view, the existence of a contract that arguably provides certain remedies for breach does not mean that a litigant is barred from seeking a quantum meruit recovery. Rather, in cases of this type, the court must first determine whether any contract exists or whether any contractual remedy can be enforced. Once the contract issue has been resolved, the evidence and the circumstances of the case may then allow the remedy of quantum meruit to be considered. Virginia cases provide support for this position. For example, in *Marine Development Corp. v. Rodak*, 225 Va. 137 (1983), the plaintiff made a claim for both breach of contract and quantum meruit. The trial judge ruled against the plaintiff on the contract claim but allowed the quantum meruit claim to be submitted to the jury. The Supreme Court of Virginia affirmed this ruling and stated that a litigant may attempt to recover for the reasonable value of his work and services on a theory of quantum meruit. Similarly, in *ITT Hartford v. Virginia Financial Associates, Inc.* 258 Va. 193 (1999), the Supreme Court reviewed the record of a case where a trial jury found against defendant Hartford on a claim for

breach of contract but in Hartford's favor on a quantum meruit claim. The case was remanded for a new trial for reasons that are not germane to the present case. However, on remand, the trial was limited to the quantum meruit claim. Thus, the plaintiff's contractual count in *ITT Hartford* was dismissed but the quantum meruit claim survived. This is similar to what has occurred in the case before the court.

Having ruled that quantum meruit may be considered, the court will now address the merits of Cornerstone's claim. Specifically, the evidence must be evaluated to determine what damages, if any, have been proved. Here, it is critical to stress that Cornerstone is not entitled to relief based on the provisions of the contract that the court has found to be unenforceable. The plaintiff cannot claim the fixed fees and the attorneys fees called for by the "cost plus fixed fee agreement" under a theory of quantum meruit. Rather, when a litigant establishes a valid claim for quantum meruit, the measure of damages is limited to what Virginia law says can be recovered.

The leading case on quantum meruit is *Hendrickson v. Meredith*, 161 Va. 193 (1933). There, the Supreme Court of Virginia observed that quantum meruit relief is premised on an implied contract to pay the reasonable value of services rendered by a party who has not been compensated. On this point, the court said that where "one renders services for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what the services are reasonably worth. . . ." *Id.*, at 200-01. The measure of damages "is the reasonable value of the work and labor performed, less the amount of compensation, whether in money or otherwise . . . received." *Id.*, at 201. The court applied this rule in *Marine Development Corporation v. Rodak*, 225 Va. 137 (1983). There, the court explained that "after services have been furnished and accepted, the fact that no price had been agreed on or that the compensation mentioned is too indefinite does not prevent the recovery of reasonable compensation." *Id.*, at 141. These same principles were clearly affirmed by the Supreme Court of Virginia in two more recent cases, *Po River Water & Sewer v. Indian Acres Club*, 255 Va. 108 (1998), and *Mongold v. Woods*, 278 Va. 196 (2009).

The court will now apply the above principles to the evidence presented by the plaintiff. To begin with, Cornerstone introduced a great deal of testimony regarding why it believed that Davison breached the contract. The company also attempted to prove damages based on its contract claim. However, Cornerstone's proof on its quantum meruit claim falls short for two reasons. First, Cornerstone did not introduce sufficient evidence to establish precisely what services performed by the company went uncompensated. Second, no evidence of any type was introduced to prove the reasonable value of such services. Many different kinds of work were performed on the home by Cornerstone. They included tasks such as plumbing, carpentry, electrical work, drywall, and painting. However, no

witness from any field of construction was called to tell the court about the reasonable value of these services. Furthermore, none of Cornerstone's employees or agents testified on this subject. Therefore, there is no evidence to establish the amount of a quantum meruit recovery.

As a result of the above analysis, the court reaches the same conclusion on the quantum meruit claim that it did on Cornerstone's contractual claim and Davison's counterclaim. The claim fails because there was no proof of the damages that can be recovered under Virginia law.

### Davison's Request for Relief with Regard to the Request for Admissions

There is no basis for this request, and it will be denied. To begin with, prior to trial, Davison never asked for any relief in the form of a discovery motion regarding the request for admissions. Second, while Rule 4:12(c) provides the court with the authority to consider an award of fees, Cornerstone was never given notice that the trial on the merits would include a request for sanctions because of its pretrial discovery responses. Third, many of the admissions were of no substantial importance to the case. Fourth, the facts of the case were complex, confusing, and hotly contested; each party had reasonable ground to believe that he might prevail on any point. Finally, most of the admissions that form the basis of this claim merited an explanation or clarification that went beyond a simple "admit" or "deny." On this issue, it should also be noted that there was little clear evidence from either party at trial on any of the facts covered by the disputed admissions. Each side introduced exhibits that contained figures and calculations that are abstruse and of little relevance to the dispute over the contract and the fifth draw. It would therefore not be appropriate to award any relief to Davison.

### Conclusion

Mr. Gregg shall prepare a final order that dismisses all of the pending claims and that removes the case from the court's docket.