## CIRCUIT COURT OF FAIRFAX COUNTY

Dulles Corner Properties II, L.P., et al.

v.

Ray F. Smith, Jr., et al.

October 14, 1992

Case No. (Law) 113399

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on Plaintiff Dulles Corner Properties II Limited Partnership's (hereinafter referred to as DCP II) Motion to Disqualify the law firm of Miles & Stockbridge from serving as counsel for the Defendant Sequoia Building Corporation (hereinafter referred to as SBC) in this matter. The Court heard a number of motions pertaining to discovery disputes leading up to the August 6, 1992, hearing on the instant motion. On August 6, 1992, the Court received the evidence of the parties, heard the argument of counsel, and took the motion under advisement. The Court has reviewed each of the exhibits submitted in evidence at the August 6, 1992, hearing, the discovery responses of the Plaintiff which were submitted for *in camera* review, and has considered each of the authorities submitted by the parties in support of their respective positions.

The underlying factual basis in support of the motion arises out of a January 13, 1992, sixty-five minute telephone conversation between R. Payton Mahaffey of Miles & Stockbridge, Fritz Fisher of Beta West, Inc., and Christina Beaton of U.S. West, Inc. The purpose for the phone call was to interview Mr. Mahaffey as a prospective attorney to represent DCP II and Dulles Corner Associates Limited Partnership (hereinafter referred to as DCA) in reference to a lease dispute with SBC and other disputes which had arisen among the persons and entities involved in DCP II and its affiliated partnerships and corporations. In fact, another partner at Miles & Stockbridge (a law firm of over 200 lawyers) represented individuals

who are partners and officers in the partnerships and corporations affiliated with DCP II.

No further contact took place between either Mr. Fisher or Ms. Beaton and Mr. Mahaffey until January 22, 1992, when Ms. Beaton forwarded a letter to Mr. Mahaffey advising him that another attorney had been chosen for the prospective representation. On March 10, 1992, the original Motion for Judgment was filed in this matter naming DCP II, DCA, and Equity Dulles Corner Venture (hereinafter referred to as Equity), Plaintiffs and Ray F. Smith, Jr., Mark W. Morgan, Herbert N. Morgan, Sequoia Venture 150-Dulles Limited Partnership (hereinafter referred to as Sequoia 150) and SBC, Defendants. The law firm of Miles & Stockbridge entered an appearance in this matter on behalf of the Defendants. Pursuant to an order entered by the Honorable J. Howe Brown on May 29, 1992, reflecting a decision on Defendants' Demurrer to the Motion for Judgment, each Count of the Motion for Judgment was dismissed except for Count I. Count I of the Motion for Judgment is a claim by DCP II against SBC for breach of a lease agreement. Plaintiffs have appealed the dismissal of Counts II through V to the Virginia Supreme Court. On May 8, 1992, Plaintiffs filed the instant motion to disqualify the law firm of Miles & Stockbridge as counsel of record for the Defendants.

Plaintiff claims in its brief that Miles & Stockbridge must be disqualified as a result of the January 13, 1992, phone conversation between Mahaffey, Fisher, and Beaton. Plaintiffs claim that an attorney-client relationship was established during that conversation, confidential information was imparted to Mr. Mahaffey, and therefore, Miles & Stockbridge must be disqualified even though Mr. Mahaffey was never retained by any of the original Plaintiffs in this matter.

SBC initially argues that present counsel of record for the Plaintiff was not authorized to bring this lawsuit and does not have standing to present the Motion to Disqualify. The Court finds this argument unavailing. DCA is the sole general partner of DCP II. Equity and Sequoia 150 are the General Partners of DCA. Section 8.5 of the Amended and Restated Agreement of Limited Partnership of DCA (Plaintiff's Exhibit 3) document states as follows:

In the event of a default by the General Partner or its affiliate under such contract or other arrangement, the other General Partner shall be the sole and exclusive authority *(without the necessity of obtaining the approval of the interested General Partner)* to take all action on behalf of the partnership with respect to enforcing the rights and obligations under such contract or arrangement. [Emphasis supplied.]

U.S. West Real Estate, Inc., a wholly-owned subsidiary of U.S. West, Inc., is the principal shareholder of Equity. Ms. Beaton is General Counsel to U.S. West, Inc., which has a management contract with Beta West Properties, Limited. Mr. Fisher is General Counsel for Beta West, Inc., the sole General Partner of Beta West Properties, Limited. Mr. Fisher and Ms. Beaton each testified through deposition (Plaintiff's Exhibits 16 and 17) that they were requested to retain local counsel to represent DCP II and DCA in this litigation. Contrary to the position now seemingly being taken by the defendant, Herbert Morgan testified at the hearing on August 6, 1992, that he had no problem with counsel having been retained to file the breach of lease claim which is the subject of the remaining Count of the Motion for Judgment in this matter. Even without reaching a collateral estoppel claim raised by the Plaintiff as a result of prior litigation in the General District Court of Fairfax County, the Court finds that present counsel for the Plaintiff were appropriately retained and therefore have standing on behalf of the Plaintiff to bring the instant motion.

The Court must therefore decide whether the fact of the January 13, 1992, conversation in and of itself or in conjunction with the matters discussed during that conversation should serve to disqualify Miles & Stockbridge. Neither of the parties has cited to the Court in their extensive memoranda, any binding authority from the Virginia Supreme Court on this issue. The cases cited by the parties set forth the three interests which any Court must weigh in deciding a Motion for Disqualification. The first is the duty and responsibility of the Court to supervise the conduct of attorneys who appear before it. *See Kevlik v. Goldstein,* 724 F.2d 844, 847 (1st Cir. 1984). The second interest is to protect the confidences that a client may divulge to an attorney. *See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 753 (2d Cir. 1975). The third is the right of a party to freely choose its counsel. *See In re Asbestos Cases,* 514 F. Supp. 914 (E.D. Va. 1981). The Court must examine the evidence and weigh these factors appropriately in reaching a determination on such a motion. The disqualification of a party's attorney is a serious matter which

"cannot be based on imagined scenarios of conflict." *Tessier v. Plastic Surgery Spec., Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990). The party moving for disqualification bears a "high standard of proof" to show that disqualification is warranted. *Id.* (citations omitted).

Courts have differed as to the scope of the inquiry which a Court should make in conducting the "weighing" of these interests. Some Courts have applied a *per se* test and ruled that once a conversation takes place wherein confidential information *might* be divulged, no inquiry as to whether confidences *in fact* were disclosed should be undertaken by the Court. *See Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). *See also T. C. Theater Corp. v. Warner Bros. Pic.*, 113 F. Supp. 265, 269 (S.D. N.Y. 1953). Plaintiff herein cites to the Court Virginia State Bar Legal Ethics Opinions 318 and 1039 in support of its position that this Court should adopt the *per se* test. Although this Court is cognizant of these Legal Ethics Opinions, the Virginia State Bar is not a party to this litigation. Legal Ethics Opinions are "advisory only" and "not binding on any Court or tribunal," Va. Code Ann., LEO and UPL App. at 68 (1991 Add. Vol.). This Court is unwilling to adopt such a *per se* rule because although there is absolutely no reason to believe that such a practice was used in this case, more and more courts are experiencing the use of disqualification motions for purely strategic reasons. See *Tessier*, 731 F. Supp. at 729. It is unfortunately no longer unheard of for litigants to contact various attorneys with an expertise in certain matters solely for the purpose of assuring that those attorneys will be unable to represent their adversaries in litigation. To adopt a *per se* rule as suggested by the Plaintiff would, in this Court's opinion, serve no purpose but to encourage such practices.

This Court in its rulings on the discovery motions had determined to examine the content of the communications between Ms. Beaton, Mr. Fisher, and Mr. Mahaffey. The Court has reviewed *in camera* Plaintiff's answers to Defendant's Interrogatories and plaintiff's response to Defendant's Request for Production of Documents relating to the content of that conversation. In ruling on the Defendant's Motion to Compel Discovery, the Court has not required the Plaintiff to provide to the Defendant those responses which Plaintiff's counsel has maintained contain matters which Plaintiff contends are confidential. However, the Court will consider these matters in the "weighing" process which the Court undertakes.

In determining the consideration which must be given to the interest of the Plaintiff in not having matters divulged which were related to an at-

torney in confidence, the Court must initially determine certain threshold questions. Although the attorney-client privilege is obviously recognized in Virginia, the Virginia Supreme Court has noted that the privilege is "an obstacle to investigation of the truth and should be strictly construed." *Commonwealth v. Edwards*, 235 Va. 499, 509 (1988). The proponent of the privilege bears the burden of establishing that the attorney-client relationship existed, that the communications were privileged, and that the privilege was not waived. *Id.* No Virginia precedent is cited to the Court as to when to an attorney-client relationship is created. Professor Friend in his treatise, *The Law of Evidence in Virginia*, Section 65, "Attorney and Client," states:

> No retainer fee need have been paid, and the communication need not have been made in the courtroom or the attorney's office. If the attorney has been consulted in his or her professional capacity for *legal advice*, this first prerequisite is satisfied. [Emphasis supplied.]

In his deposition (page 26), Mr. Fisher testified that he did not recall Mr. Mahaffey making any recommendations to Mr. Fisher or Ms. Beaton, nor did they solicit any. "It was too early in the game for that, too early in the game to be soliciting specific recommendations." In response to further questioning, Mr. Fisher testified as follows:

> Q. Do you agree with Ms. Beaton's characterization of the phone conversation as an interview of *prospective* counsel? [Emphasis supplied.]
>
> A. Yeah, I do.

In her deposition, Ms. Beaton testified similarly.

> Q. Did you solicit from these attorneys you spoke with specific courses of action with respect to litigation?
>
> A. You mean tell us what to do?
>
> Q. Exactly.
>
> A. No, we were looking more for general familiarity with the law in Virginia and litigation experience.
>
> Q. It sounds like it was an interview process; is that correct?

A. Clearly, we were interviewing, we were interviewing lawyers. We were trying to get to know lawyers. We were making sure.

This evidence, at best, would only marginally support a finding of the establishment of an attorney-client relationship with Mr. Mahaffey.

The second threshold inquiry pertains to whether the matters related by Ms. Beaton and Mr. Fisher to Mr. Mahaffey were "confidential." In making this determination, the Court has considered (1) Ms. Beaton and Mr. Fisher's deposition testimony concerning their conversation with Mr. Mahaffey; (2) the content of that conversation as set forth in Plaintiff's *in camera* response to Defendant's interrogatory No. 1; and (3) the subsequent disclosures publicly made by DEP II in the Motion for Judgment in this matter. Less than two months after the January 13, 1992, phone conversation, this lawsuit was filed. The Motion for Judgment herein communicated to the public virtually the entirety of the matters which Plaintiff now claims were imparted to Mr. Mahaffey in confidence. It is after this public disclosure that Plaintiff contends that Miles & Stockbridge should be disqualified because these same matters had previously been imparted to Mr. Mahaffey in confidence. Even assuming that the matters were imparted to Mr. Mahaffey in confidence, they had entirely lost their confidential nature by the time that Miles & Stockbridge entered its appearance in this matter on behalf of the Defendant.[3] The factor of protecting the sanctity of any "confidences" imparted by Mr. Fisher or Ms. Beaton to Mr. Mahaffey is therefore of little consequence in the Court's "weighing" process.

The Court must still consider its responsibility to the public to maintain the integrity of the legal profession. This litigation arises out of disputes between two factions in major corporate and partnership entities. Allegations of improper conduct have been lodged by both sides. The attorneys involved in this litigation have also raised cross-issues of improprieties against opposing counsel. I do not believe that the disqualification of

---

[3] At a hearing on August 3, 1992, the Court invited counsel for the Plaintiff to submit further responses to Defendant's interrogatory No. 1 (which sought disclosure of the matters discussed with Mr. Mahaffey) for *in camera* review, in the event that in preparation for the depositions of Mr. Fisher and Ms. Beaton or during the depositions, any further details were remembered by either Ms. Beaton or Mr. Fisher. At the August 6, 1992, hearing, the Court specifically inquired of counsel for the Plaintiff as to whether the lack of any such supplemental response was indicative of the fact that no further information had been recalled and counsel responded affirmatively.

Miles & Stockbridge under circumstances such as those present here would serve much if any purpose in furthering the general public's confidence in the integrity of the legal profession.

In *Board of Educ. of N.Y. City v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979), the Second Circuit held that the appropriate standard to be considered in Motions for Disqualification is whether the attorney's conduct will tend to "taint the underlying trial." In his concurring opinion in *Nyquist*, Judge Mansfield eloquently set forth the rationale behind this Second circuit rule:

> The attorney is the client's choice. Disqualification is wasteful and time-consuming. Only where the attorney's unprofessional conduct may affect the outcome of the case is there any necessity to nip it in the bud. Otherwise, conventional disciplinary machinery should be used and, if this is inadequate, the organized bar must assume the burden of making it effective as a deterrent.

*Id.* at 1247-48.

In *Aetna Cas. and Sur. Co. v. United States*, 570 F.2d 1197 (4th Cir. 1978) *cert. denied*, 430 U.S. 821 (1978), the Fourth Circuit cautioned against a blanket application of the Virginia Code of Professional Responsibility to all situations and approvingly quoted the following language from *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir. 1975):

> It behooves this Court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the code to all situations automatically might not be productive of more harm than good, by requiring that client and the judicial system to sacrifice more than the value of the presumed benefits. *Aetna*, 570 F.2d at 1202.

This Court hereby adopts the Second Circuit's standard for weighing the competing interests in Motions for Disqualification. If in fact disciplinary violations have occurred, there is sufficient comprehensive disciplinary machinery available to all parties to this litigation to effectively deal with any such misconduct. *See Nyquist*, at 1246. When the evidence presented to the Court at the August 6, 1992, hearing is considered in conjunction

with the *in camera* discovery responses and evaluated against this test, the Plaintiff has failed to bear the high standard of proof required to justify disqualification. Accordingly, the Motion for Disqualification is denied.